UNITED STATES, Appellant

v

ROGER L. PRIEST, Journalist Seaman Apprentice, U. S. Navy, Appellee

21 USCMA 64, 44 CMR 118

■■■■■■■■

No. 23,937

August 27, 1971

■■■■■■■■■■■■■■

*Captain John J. Reilly,* USCMR, argued the cause for Appellant, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever,* USMC, and *Commander Michael F. Fasanaro, Jr.,* JAGC, USN.

*David Rein, Esquire,* argued the cause for Appellee, Accused. With him on the brief was *Lieutenant Arthur H. Rainey,* JAGC, USNR.

## Opinion of the Court

QUINN, Judge:

Considering one of eight errors assigned, the United States Navy Court of Military Review reversed the accused's conviction of two specifications alleging the making of statements disloyal to the United States. It held that certain instructions by the trial judge were contrary to the decision of this Court in United States v Harvey, 19 USCMA 539, 42 CMR 141 (1970). As authorized by Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867, the Judge Advocate General of the United States Navy forwarded the case to this Court to review the correctness of that determination.

The trial judge instructed the court members as to the essential elements of the offense. Apparently, in accordance with guidelines in the Military Judge's Guide, Department of the Army Pamphlet 27–9, May 1969, change 1, chapter 4, page 4–161, he also elaborated upon the meaning of disloyal. He described the word "disloyalty" as importing "not being true to or not being faithful to an authority to whom respect, obedience, or allegiance is due." Individual defense counsel requested further elaboration to make clear that the findings of disloyalty must be to

the United States, not "to any other person or institution such as the Secretary of Defense or the United States Navy."[1] The request was denied.

In *Harvey,* at page 544, we held that the instruction was overly broad, and in the circumstances of the case, presented a fair risk of prejudice to the accused in that, in light of the instructions, the court members could have "concluded that the evidence of prospective disobedience to orders demonstrated unfaithfulness to the obligation of obedience to orders of the Marine Corps, as the representative of the United States" and that unfaithfulness to this authority constituted disloyalty to the United States. A similar situation was before us in United States v Gray, 20 USCMA 63, 68, 42 CMR 255 (1970). There, the statements attributed to the accused could reasonably be construed as expressing disloyalty to the Marine Corps and its practices. Speaking of the difference between disloyalty to one of the instrumentalities of government and disloyalty to the United States as a sovereign entity, we said: "Defiance of, or disloyalty to, the Marine Corps is not tantamount to disloyalty to the United States as a political entity." Thus, *Harvey* and *Gray* require con-

---

[1] We state the request in this form because it was apparently so construed by the Court of Military Review. The Government disputes this construction. It maintains that defense counsel's requested instruction meant to convey the idea that disloyalty to a particular official of the United States "cannot be . . . considered *evidence*

of disloyalty to the United States" (emphasis supplied); and it argues that evidence of disloyalty to a public official or a Government Department can properly be considered *evidence* of disloyalty to the United States. For the purpose of this review, we assume the correctness of the Court of Military Review's construction.

sideration of whether the statements made by the accused can reasonably be regarded as disloyal to "the military," as distinguished from the United States; if they have that quality, the judge's expansive definition of "disloyalty" could have led the court members to conclude that a finding of nonallegiance to the military would satisfy the requirement that they find that the statements were disloyal to the United States.

Appellate Government counsel contend that the record in this case, contrary to that in both *Harvey* and *Gray*, demonstrates the absence of any fair risk that the court members were misled by the scope of the definition of disloyalty. They acknowledge that the two publications in issue, the May and June 1969 editions of "OM," described as "The Servicemen's Newsletter" and "The Liberation Newsletter," contain references to the armed forces and individual Government officials, but they contend that, in substance and context, the references so clearly represent merely a "manifestation of the general character of the United States" that no "confusion" could have arisen in the court members' minds "between disloyalty to the United States and disloyalty to a branch of the armed forces" or to a particular official of the Government.

The length of the Newsletters makes it inappropriate to set them out in this opinion. There are indeed references of a disparaging nature to the military and public officials, but the trial judge instructed the court members they must find that each publication "taken in its entirety" was disloyal to the United States. The instruction required the court members to consider the tenor of the whole of the publication, not its separate parts. The importance of the instruction is apparent in the verdict.

Three issues of the Newsletter were before the court members. Besides the May and June issues, which constitute the subject matter of specifications 5 and 6 respectively, there was the April issue which was the subject of specifi-

cation 4. The April Newsletter dealt almost entirely with statements against the military; these statements were significantly similar to those about the military in the May and June issues. The court members acquitted the accused of specification 4. While it is true that acquittal of one charge may have little relevance to the findings of guilty relating to another charge, even one of the same kind, the difference in the action taken by the court members here is indicative of their understanding of their obligation to find that the "entirety" of each publication was disloyal to the United States, not merely disloyal to one of its departments or officials. Considering the totality of the instructions, we are satisfied they avoid the ambiguity of those in *Harvey* and *Gray* and present no reasonable risk that the court members predicated their finding that each Newsletter "in its entirety" was disloyal to the United States upon a finding that parts of the publication were disloyal to the military or a public official. We conclude, therefore, that the Court of Military Review erred in its determination that the accused was prejudiced by the instructions.

The certified question is answered in the negative. The record of trial is returned to the Judge Advocate General for submission to the Court of Military Review for consideration of the other assignments of error, which include whether the evidence is sufficient to sustain the charges of which the accused was convicted, and such other issues as may be properly presented to the court.

Chief Judge DARDEN concurs.

FERGUSON, Senior Judge (dissenting):

I dissent.

My brothers hold that the Court of Military Review erred in its application of this Court's opinion in United States v Harvey, 19 USCMA 539, 42 CMR 141 (1970), to the case at bar. They believe that the "totality of the instructions" avoids the prejudicial effect of the inadequate definition, by the military judge, of the word *disloyalty*. I disagree.

In this case, as in *Harvey*, the military judge defined the word *disloyalty* as meaning

". . . not being true to or not being faithful to *an authority to whom respect, obedience, or allegiance is due.*" [Emphasis supplied.]

The emphasized portion of the above instruction is precisely what we held in *Harvey* to be prejudicially inadequate, standing alone, because:

". . . There was no instruction that the authority to whom allegiance was due was the United States, not the Marine Corps or other department of Government. . . ." [*Ibid.*, at page 544.]

It cannot be said that the inadequate instruction was not important to conviction for one of the essential elements of the offenses of which the accused was convicted was that the pamphlet, described in each of the specifications, "taken in its entirety, is disloyal to the United States." Nor can it be said that defense counsel acquiesced in the inadequacy for, as the Court of Military Review observed in its opinion:

"The infirmity in the instructions is emphasized by a requested defense instruction which the military judge refused to give. The requested instruction was:

'The disloyalty charged here is to the United States and not disloyalty to any other person or institution such as the Secretary of Defense or the United States Navy.' (Defense requested instruction 16)

"In refusing the instruction, the military judge stated:

'I'm going to sustain the objection to 16. Clearly the elements show that the disloyalty is to the United States. *But the United States certainly includes its various departments or subdivisions.*' (Italics added.)

"The italicized sentence clearly shows the military judge's misunderstanding of the offense as subsequently defined by the United States Court of Military Appeals. The military judge demonstrated that in his opinion disloyalty to an authority of the United States is equivalent to disloyalty to the United States."

Since, as the Court of Military Review rightly concluded, the military judge misunderstood the need for additional instructions with regard to the definition of the term disloyal, it seems quite unlikely that the members of the court, not being lawyers, would have any better understanding of the issue. Absent the requested instruction, prejudicial error occurred. United States v Harvey, supra.

My opinion, with regard to the lack of understanding of the court members, is buttressed by the fact that despite the denial of the request to instruct, defense counsel vigorously argued before the court:

"Now, what are the elements which you must find beyond a reasonable doubt and which the government must give you proof beyond a reasonable doubt with respect to these allegations? Now, the first element you must consider—and I turn to the very end of the Charge, and that is the Charge stating, with regard to each of these specifications, that they contain statements —that the pamphlets in their entirety contain statements disloyal to the United States. And I ask you when you begin your considerations, to direct yourselves to that portion of the specification first because if you do not find that it contained statements disloyal to the United States, then you can ignore the rest of the specifications and you need not consider the other requirements of the specification. Let me emphasize to you what the specification says. It says 'disloyal to the United States'. It does not say, 'disloyal to the navy'; it does not say 'disloyal to President Nixon'; it does not say 'disloyal to the Secretary of Defense'; it does not say 'disloyal to

the Chairman of the House Armed Services Committee.' It says 'disloyal to the United States' and that is [on] what you must concentrate your attention."

This portion of defense counsel's argument correctly stated the law (United States v Harvey, supra); it was the core of his defense that the statements were *not* disloyal to the United States. Without the requested instruction, the court members were deprived of the necessary "lucid guideposts" to enable them to "knowledgeably apply the law to the facts as they find them." United States v Smith, 13 USCMA 471, 474, 33 CMR 3 (1963). See also United States v Jones, 13 USCMA 635, 33 CMR 167 (1963); United States v Tanner, 14 USCMA 447, 34 CMR 227 (1964). Without the proper guidance, the court was at liberty to reject the argunment of counsel, correct though it was, as not being the law. At the very least, there is room for reasonable doubt and, as Chief Judge Quinn wrote in his separate opinion in United States v McIntosh, 12 USCMA 474, 477, 31 CMR 60 (1961), "Doubtful instructions *must* be resolved in favor of the accused." (Emphasis supplied.)

The striking similarities between the allegations and findings in this case and in *Harvey* further reflect, in my opinion, the correctness of the Court of Military Review's application herein of the *Harvey* holding. Both Harvey and Priest were charged with conducting certain activities with the *intent to interfere with, impair, and influence the loyalty, morale, and discipline* of a member or members of the armed forces, in violation of section 2387, Title 18, United States Code. Each was acquitted of these specific allegations by the court which tried them but convicted, *on the basis of the same evidence,* of the lesser included offense of making statements disloyal to the United States. Under such circumstances, the failure of the military judge to fully inform the court members of the meaning of the term disloyalty to the United States, as required by *Harvey,* is especially critical.

The certified question asks whether the Court of Military Review was correct in its determination that the instructions given by the military judge on the meaning of the term *disloyalty* were prejudicially inadequate. I would answer the certified question in the affirmative.