Mark **AVRECH**, Appellant,

v.

The **SECRETARY OF the NAVY.**

No. 71–1841.

United States Court of Appeals, District of Columbia Circuit.

Reargued 6 Feb. 1975.

Decided 26 Sept., 1975.

David Rein, Washington, D. C., and Dorian Bowman, New York City, for appellant.

Richard A. Graham, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and James F. McMullin, Asst. U. S. Attys., were on the supplemental memo for appellee.

Before Mr. Justice CLARK,* Associate Justice of the Supreme Court of the United States, and WRIGHT and WIL-KEY, Circuit Judges.

* Mr. Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation pursuant to 28 U.S.C. § 294(a)(1970).

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

This case comes before us for a second time, having in the interim gone to the Supreme Court. The facts were set out thoroughly in our previous opinion by Justice Clark, and need not be here repeated. We note that this is an action for collateral relief from a 1969 special court-martial, wherein appellant was convicted of attempting to publish a disloyal statement to members of the Armed Forces, with design to promote disloyalty and disaffection among the troops, while stationed at Marble Mountain Air Facility, Da Nang, Republic of Vietnam.

■ Previously we reached only the initial question whether appellant was convicted under an unconstitutionally vague and overbroad section of the Uniform Code of Military Justice.[1] Our determination that appellant had been so convicted was reversed by the Supreme Court[2] in light of its opinion in *Parker v. Levy.*[3] As a result, we have been asked to consider the remaining issues posed in this case: (1) Whether appellant's conviction violated the First Amendment as applied to the facts of his case,[4] and (2) whether the specification of charges initiating appellant's military prosecution was itself unconstitutionally vague.

■ On the record here, after a most thorough examination, we conclude that appellant's claims are without merit. We therefore affirm the District Court's denial of a collateral remedy.[5]

1. 155 U.S.App.D.C. 352, 477 F.2d 1237 (1973).

2. 418 U.S. 676, 94 S.Ct. 3039, 41 L.Ed.2d 1033 (1974) (*Per Curiam*).

3. 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

4. In an effort to place this case within the protection of the First Amendment, appellant argues that his attempted statement was not directed to inciting or producing violence nor would it "undermine the effectiveness of response to command." Appellant's Supplemental Memorandum on Remand, p. 9. He goes on to contend that his statement did no more than express views which appeared in "a book sold freely at the PX on his base." *Id.* at p. 12.

The Government states the relevant inquiry to be "whether appellant's attempt to disseminate his materials could be construed in the context of a Vietnam battlefield as destructive of necessary military order and discipline." Supplemental Memorandum of Appellee, pp. 4–5. Unfortunately, the Government's brief gives us no assistance in answering the question posed. In the next sentence appellee asserts its desired result: "Since appellant's acts were unprotected by the First Amendment due to the exigencies of military life and since the acts were found destructive of military discipline *on a rational basis by his commander,* then the judicially recognized mechanisms of the Uniform Code of Military Justice and the sanctions of Article 13 [probably meant Article 134] were properly. [sic]" *Id.* at 5.

We reject the Government's contention that the First Amendment need only be considered by the military commander when he initiates a prosecution, and that this is determinative thereafter. An accused in the military has the right to present a defense based upon the First Amendment at his court-martial and this right cannot be cut off by an initial determination that precedes the adjudicative process.

5. When this case was before the Supreme Court, it directed the parties to file additional briefs on whether the District Court had subject matter jurisdiction over appellant's action. It appears that the Court was concerned whether someone not in military custody or parole, such as appellant, an ex-serviceman, had a remedy available by which to collaterally attack a military conviction. (It is well settled that the federal courts have jurisdiction by way of habeas corpus to review military courts' judgments for violations of the Constitution. *Gusik* v. *Schilder,* 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950).) The issue was neither raised nor argued before this court originally. This was probably because this court has held that custody is not a jurisdictional prerequisite for collateral review of military judgments and has provided modes of relief beside habeas corpus. *Kauffman* v. *The Secretary of the Air Force,* 135 U.S.App.D.C. 1, 415 F.2d 991, *cert. denied,* 396 U.S. 1013, 90 S.Ct. 572, 24 L.Ed.2d 505 (1969); *Homey* v. *Resor,* 147 U.S.App.D.C. 277, 455 F.2d 1345 (1971). Most recently the Supreme Court has resolved this jurisdictional issue in appellant's favor. In *Schlesinger* v. *Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), the Court held that Article 76 of the UCMJ did not bar a suit in the District Court under 28 U.S.C. § 1331 to enjoin a court-martial. In addition, it noted that Article 76 cannot be

## I.

In *Parker* v. *Levy* the Supreme Court decided that Articles 133 and 134 of the Uniform Code of Military Justice (UCMJ) were neither unconstitutionally vague nor facially invalid because of overbreadth. In so doing the Court broadly sketched the place of the First Amendment in military society:

While the members of the military are not excluded from protection granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections. The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it.[6]

Applying these principles we recently stated that

in a combat zone, a commanding officer must be afforded substantial latitude in balancing competing military needs and first amendment rights. . . . Because judges are ill-equipped to second-guess command decisions made under the difficult circumstances of maintaining morale and discipline in a combat zone . . . we should not upset such determinations unless the military's infringement upon first amendment rights is manifestly unrelated to legitimate military interests.[7]

▉ The applicable principles are no different when applied to court-martial convictions. Court-martial panels must consider non-frivolous constitutional claims as a part of the adjudicative process. They must carefully consider free speech claims, just as military commanders must, in striking "the proper balance

between legitimate military needs and individual liberties . . . ."[8] As civilian courts we must afford the military adjudicative process "substantial latitude" in performing its balancing role. As a result, we will not overturn a conviction unless it is clearly apparent that, in the face of a First Amendment claim, the military lacks a legitimate interest in proscribing the defendant's conduct.

## II.

We next turn to the question whether the court-martial panel did, in fact, engage in the balancing of First Amendment rights and military needs which the Constitution requires. In this regard, our effort has been hampered by the fact that a verbatim transcript of appellant's special court-martial does not exist. Since no discharge was adjudged, the Manual for Courts-Martial (hereinafter MCM) only requires the preparation of a summarized transcript containing the answers to all questions asked of witnesses and the notation that motions and other procedural matters had been made and ruled upon.[9]

After the defense had rested its case at trial, the summary transcript before us contains the following entries:

The prosecution made (an) (no) argument.

The defense made (an) (no) argument.

The prosecution made (a) (no) closing argument.

Pursuant to Article 51c, the president instructed the court as to the elements of each offense charged, the presumption of innocence, reasonable doubt, and burden of proof, *direct and circumstantial evidence, intent. The defense had instructions on the 1st Amendment, and it is attached as Ap-*

read as barring all forms of relief beside habeas corpus. We view *Councilman* as the more difficult jurisdictional case (since it is an attempt to enjoin a trial) and are confident that there is jurisdiction to consider an action seeking post-conviction relief.

**6.** 417 U.S. at 758, 94 S.Ct. at 2563.

**7.** *Carlson v. Schlesinger,* 167 U.S.App. D.C. 325, 330–31, 511 F.2d 1327, 1332–33 (1975).

**8.** *Id.* at 329, 511 F.2d at 1331.

**9.** MCM ¶ 83 and Appendix 10 (1968).

*pellate Exhibit O. The prosecution submitted instructions which are attached as Appellate Exhibit I.*

Neither the prosecution nor the defense having anything further to offer, the court was closed. Thereafter, the court opened and the president announced that, in closed session and upon secret written ballot, ~~(the accused was found not guilty)~~ (two-thirds of the members present at the time the vote was taken concurring in each finding of guilty, the accused was found):

Of Charge I and the Specification thereunder: GUILTY

Additional Charge I

Of ~~Charge II~~ and the specification thereunder: NOT GUILTY.[10]

The instructions referred to are reproduced below in the margin.[11]

Although the issue had not been raised at any time by appellant's counsel, on thorough review of the record our panel was concerned as to whether *any* instruction on the First Amendment issue had in fact been given by the president of the special court-martial to his lay colleagues. A look at the record quoted above reveals the ambiguity, "The defense had instructions on the First Amendment . . ."; and, "The prosecution submitted instructions . . ." It is apparent that this language is susceptible to three interpretations: (1) that both instructions were given along with the other listed instructions; (2) that neither instruction was given; or (3)

that one instruction was given but not the other, since the record phrased the situation in two different ways, *i. e.,* "The defense *had* . . ." and "The prosecution *submitted* . . . ."

In response to certain questions posed by us in the hope of illuminating the matter, the parties submitted briefs and the Government followed with an affidavit from the officer who had served as the president of the court-martial. The officer summarized his recollection six years later as "My recollection is clear, however, that the instruction requested by the trial counsel was given to the Court-Martial Board. I cannot say that the instruction requested by the defense counsel was not given, but I do not believe that it was. It is possible if I could see a transcript of the trial record that I would be able to answer this question with greater certainty." [12]

While the court does not by any means have all of the illumination for which it had hoped, one critical factor is undeniably clear, "the issue of First Amendment protection" [13] *was* put to the special court-martial. To be sure, the charge apparently given could be improved upon. Indeed, we note that, since 1969 when PFC Avrech was court-martialed, the Court of Military Appeals has spoken in great detail on the subject of First Amendment protection for servicemen and has set forth the correct instructions to be used by courts martial in evaluating Free Speech defenses.[14] The language of the instructions in this case— "rather the court must be convinced that

10. Summarized Record of Trial, p. 35 (emphasis added).

11. Defense instructions (Appellate Exhibit O):
   The issue of the First Amendment Right to Free Speech has been raised. Each of you in your own deliberations must decide whether the utterance falls within the protection of the First Amendment.

   Prosecution's Instruction (Appellate Exhibit I):
   In connection with the issue of First Amendment protection the statement of Pfc Avrech, alone, need not create a clear and present danger in order for the statement to

fall outside the protection of the constitution. Rather the court must be convinced that such a danger would arise if statements such as Pfc Avrech's were protected by the First Amendment.

12. Affidavit of Robert L. Sikma, 2 July 1975.

13. *See* note 11, *supra.*

14. *See United States* v. *Priest,* 21 U.S.C.M.A. 64 (1971); *United States* v. *Gray,* 20 U.S.C.M.A. 63 (1970); *United States* v. *Harvey,* 19 U.S.C.M.A. 564 (1970). *See also United States* v. *Priest,* 21 U.S.C.M.A. 564 (1972); *United States* v. *Daniels,* 19 U.S.C.M.A. 518 (1970).

such a [clear and present] danger would arise if statements such as PFC Avrech's were protected by the First Amendment"—does put into issue, however, inartistically, appellant's First Amendment rights *vis-a-vis* military command necessities, the primary thrust of *Parker* v. *Levy.* We need not, though, further discuss the contents of such instructions, for in our view the matter was never properly raised by appellant.

■ Although neither counsel for the Government nor counsel for appellant ever effectively crystallized the true issue before us, we think it patent that the act of balancing First Amendment rights against the military necessity of the moment is inextricably bound to the fact-finding process, and, on review, it is the instructions guiding the members of the court ·martial panel to which we must direct our attention. If the panel has been properly instructed, its findings cannot readily be set aside by. an appeals court, especially in a collateral proceeding such as this.

As we have noted, the issue of appellant's First Amendment rights was clearly in the forefront of the mind of appellant's defense counsel, who was a lawyer.[15] We may assume that this point, if none other, was explicated by defense counsel to the court. The First Amendment point had been made the sole subject of a motion to dismiss before the trial began; it was argued, and over-ruled. The instruction on defendant's First Amendment rights was the only charge requested by defense counsel. Appellant's First Amendment rights balanced against military command necessities was obviously not a point military counsel (on either side) was prepared to overlook.

■ Although objection to any failure to instruct properly was preserved by defendant's requested instruction if it were not given,[16] no failure to instruct was ever raised as a point on appeal during the entire military review process. This was true despite the fact that appellant's present private counsel became involved in the case during that time and was therefore in a position to raise this issue even if appointed military counsel had overlooked it. Nor was a failure to instruct raised in the District Court, nor in two arguments and separate exchanges of briefs in this court. It was this court, not satisfied that the record was complete, which *sua sponte* raised for the first time in its order of 28 May 1975, six years after trial, the question whether a First Amendment instruction had been given at trial.

■ We are reluctant to permit appellant to use the lack of a verbatim transcript as a sword against the Government. Since the proceedings had been recorded and the recording was available for use during the military review process,[17] a verbatim transcript could have been prepared had the issue been timely raised. This is clearly a case in which appellant's delay operated to prejudice the Government's ability to defend and, as a result, the appellant should not be heard to complain about the inadequacies of the record. We therefore conclude

15. The Record of Trial notes that defense counsel (and trial counsel) met the requirements of Article 27, UCMJ, which requires that counsel at a general court-martial be members of the bar of a federal court or of the highest court of a state and certified as competent by the Judge Advocate General.

16. Under military law, the defense preserves an objection to the instructions given if it has requested an instruction on the issue. It appears to be immaterial that the instruction requested by defense counsel was incorrect as long as the request reasonably puts the court on notice that "an instruction on the issue is essential to a proper disposition of the case." *United States* v. *Walker,* 7 USCMA 669, 677, 23 CMR 133 (1957).

17. The Government in its supplemental memorandum indicates that "the stenographic disc recording" had not been discarded or erased until "[a]fter the completion of direct military appellate review. . . ." Pp. 1–2. Although we do not question this assertion, we do note that the MCM states that "the notes or recordings of the original proceedings need not be retained after the record of trial has been authenticated." MCM ¶ 83b (1968).

that the First Amendment claim of appellant, which at base revolves solely around the propriety of the instructions given by the court-martial president on that defense, was in effect waived by the failure of appellant to raise it at any time in the military appeals process.[18]

### III.

■ Finally, appellant argues that the specification of charges initiating appellant's military prosecution was itself unconstitutionally vague. Principal reliance is placed upon the District Court decision in *Stolte* v. *Laird*,[19] which held that "disloyal" was unduly vague when used in a specification charging a violation of Article 134, UCMJ. Despite appellant's arguments to the contrary, we do not believe that the reasoning of *Stolte* survives in the aftermath of *Parker* v. *Levy.*

The specification here under review tracks the wording of Article 134 and then proceeds to set out *in haec verba* the text of the statement. There can be no question that the specification in fact adequately apprised Avrech of the nature and substance of the offense with which he was being charged. Although it is again urged that the standard set down by using the terms "disloyal" and "disloyalty" is unconstitutionally vague, that precise issue was decided adversely to appellant when the prior judgment of this court was reversed by the Supreme Court. Furthermore, the specification under Article 134 in *Parker* v. *Levy* contained the identical language under attack here. Although it is true that Levy's specification also included the phrase "to the prejudice of good order and discipline in the armed forces," this difference is immaterial since the phrase does not serve to clarify "disloyal." The record notes no argument about proposed instructions, even though the MCM requires that such argument be "recorded and incorporated in the record."[20] Appellant's renewed vagueness challenge must therefore fail.

### IV.

Having found the arguments of appellant to be without merit, we affirm the judgment of the District Court.

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (dissenting):

I dissent from the result reached in the opinion of the majority, for the following reasons.

Appellant was convicted of attempting to publish a statement[1] "with design to

---

**18.** Our dissenting colleague misapprehends the nature of the waiver involved here by citing the nonwaiver rule of *United States* v. *Walker*, note 16, *supra*. It is not the appellant's failure *per se* to raise timely the inadequate instruction issue, but the prejudicial delay which precluded any means by which it could be determined exactly what First Amendment instructions were given at the trial.

**19.** 353 F.Supp. 1392 (D.D.C.1972).

**20.** MCM ¶ 73d (1968).

**1.** The statement reads in full:

"I've been in this country now for 40 days and I still don't know why I'm here. I've heard all the arguments about communist aggression and helping the poor defenseless people. I've also heard this three years ago. The entire Vietnamese Army will switch to a pacification role in 1967 and leave major fighting to the American troops. (Statement of South Vietnamese Foreign Minister, L. A. Times, Nov. 18, 1966.) It seems to me that the South Vietnamese people could do a little for the defense of their country. Why should we go out and fight their battles while they sit home and complain about communist aggression. What are we cannon fodder or human beings? If South Vietnam was willing to go it on their own back in 1964 what the hell is the matter with them now? The United States has no business over here. This is a conflict between two different politically minded groups. Not a direct attack on the United States. It's not worth killing American boys to have Vietnam have free elections. (Former Vice President Richard M. Nixon, L. A. Times, December 31, 1967.) That was our present leader of this country and now he has the chance to do something about the situation and what happens. We have peace talks with North Vietnam and the V.C. That's just fine and dandy

promote disloyalty and disaffection among the troops." The only instruction given the court-martial on appellant's First Amendment rights was at the prosecution's request.[2] It reads:

> In connection with the issue of First Amendment protection the statement of Pfc Avrech, alone, need not create a clear and present danger in order for the statement to fall outside the protection of the constitution. Rather the court must be convinced that such a danger would arise if statements such as Pfc Avrech's were protected by the First Amendment.

With all respect, in my judgment this instruction is 100% wrong. Avrech's statement was protected unless, considering the circumstances, "the words used" created a clear and present danger. *Schenck* v. *United States*, 249 U.S.

47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919). The clear and present danger test as announced in *Schenck* has been adopted by the United States Court of Military Appeals. *See United States* v. *Priest*, 21 U.S.C.M.A. 564, 570, 45 C.M.R. 338 (1972), *cited with approval Parker* v. *Levy*, 417 U.S. 733, 758–759, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). And the majority concedes that *Priest* sets forth "the correct instructions to be used by courts martial in evaluating Free Speech defenses." At 104. The Supreme Court in *Parker* v. *Levy* teaches us that "members of the military are not excluded from the protection granted by the First Amendment." *Id.* 417 U.S. at 758, 94 S.Ct. at 2563. While "the different character of the military community and of the military mission requires a different application of those protections," *id.*, the legal principles basically remain the same.[3]

except how many men died in Vietnam the week they argued over the shape of the table? Why does this country think that it can play games with peoples lives and use them to fight their foolish wars, I say foolish because how can you possibly win anything like a war by destroying human lives. Human lives that have no relation at all to the cause of the conflict. Do we dare express our feelings and opinions with the threat of court-martial perpetually hanging over our heads? Are your opinions worth risking a court-martial? We must strive for peace and if not peace then a complete U.S. withdrawal. We've been sitting ducks for too long. * * * SAM"

2. Appellant's requested First Amendment instruction apparently was not given. But as the majority opinion states in its footnote 16:

> Under military law, the defense preserves an objection to the instructions given if it has requested an instruction on the issue. It appears to be immaterial that the instruction requested by defense counsel was incorrect as long as the request reasonably puts the court on notice that "an instruction on the issue is essential to a proper disposition of the case." *United States* v. *Walker*, 7 USC MA 669, 677, 23 CMR 133 (1957).

In spite of this footnote in its opinion, the majority in text at pages 105–106, suggests that appellant has waived the issue of faulty instructions by his failure to raise it in the military appeals process or the district court. As to raising the instruction issue in the military appeals process, the *Walker* case is dispositive. After he was discharged from the

service appellant was represented by new civilian counsel in the district court who had not been present at the court-martial. The only record of instructions appellant's new counsel apparently had available is the same confusing summary transcript which has complicated our consideration here.

In any event, it is clear that Avrech and his counsel have consistently urged—here, in the district court, and in the military appeals process—that his statement was protected by the First Amendment. In light of that consistent position, there is no indication whatever that appellant has "deliberately by-passed" the issue of inadequate instructions on First Amendment protections, and it is, in my judgment, a mistake to find that he has waived his claim. *See Fay* v. *Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) (waiver requires a "deliberate by-passing," based on the "considered choice" of the accused).

3. It should also be noted that the majority announces a standard for review of court-martial convictions far less exacting than is warranted by our prior cases, particularly *Kauffman* v. *Secretary of the Air Force*, 135 U.S. App.D.C. 1, 7, 415 F.2d 991, 997, *cert. denied*, 396 U.S. 1013, 90 S.Ct. 572, 24 L.Ed.2d 505 (1969), or by the Supreme Court's latest decision in this area, *Schlesinger* v. *Councilman*, 420 U.S. 738, 746, 95 S.Ct. 1300, 1307, 43 L.Ed.2d 591 (1975). The majority states: "we will not overturn a conviction unless it is clearly apparent that, in the face of a First Amendment claim, the military lacks a legitimate interest in proscribing the defend-

Since Avrech's conviction is based on a single First Amendment instruction which grossly misstated the law, I submit it should be vacated. Now that Avrech has been proved right, rather than disloyal, it is the least that should be done.

ant's conduct." At 103. The majority derives this standard from *Carlson* v. *Schlesinger*, 167 U.S.App.D.C. 325, 511 F.2d 1327, 1332–1333 (1975). But *Carlson* was not a court-martial case. It concerned the proper standard for reviewing the decision of a base commander denying permission, under applicable regulations, to servicemen who wanted to circulate petitions on a base in a combat zone.

I think it is a mistake to extend the *Carlson* standard beyond the facts there involved, and certainly a mistake to apply it to court-martial convictions, which may carry sanctions far more severe than inability to circulate a petition. Such a standard, it seems to me, makes it inevitable that we uphold nearly all disloyal statement convictions, no matter how mild the offending statement may be. At the very least, such a departure should not take place without a more careful consideration of both *Kauffman* and *Councilman*.