Roger L. PRIEST, Appellant,

v.

The SECRETARY OF the NAVY.

No. 75–1054.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 26, 1977.

Decided Dec. 30, 1977.

David Rein, Washington, D. C., for appellant.

Karen I. Ward, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease, Asst. U. S. Attys. and John K. Lawrence, Dept. of the Navy, Washington, D. C., were on the brief for appellee.

Before TOM CLARK,\* Retired Associate Justice of the Supreme Court of the United States, and MacKINNON and ROBB, Circuit Judges.

Opinion for the Court filed by ROBB, Circuit Judge.

ROBB, Circuit Judge:

Appellant Priest, a former seaman apprentice in the Navy, seeks collateral review of his conviction by court-martial for violations of Article 134 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. The basis of the conviction was his distribution of a "Serviceman's Newsletter". Without opinion the District Court granted the Secretary's motion for summary judgment. On appeal Priest contends that the conviction was obtained in violation of his First Amendment rights because (1) the court-martial was instructed improperly on the application of the First Amendment, and (2) the material he distributed was merely abstract advocacy. Priest also alleges that inconsistent decisions by the United States Court of Military Appeals denied him due process of law.

We conclude that the instructions the military judge gave to the court-martial were consistent with the requirements of the First Amendment and that the evidence was sufficient to support the conviction. We find no merit in Priest's Fifth Amendment contention; consequently, we affirm the judgment of the District Court.

## THE FACTS

In the spring of 1969 Priest was a Navy seaman apprentice stationed at the Pentagon. On his own time and with his own

---

\* Mr. Justice Tom C. Clark, United States Supreme Court Retired, sitting by designation pursuant to 28 U.S.C. § 294(a). Justice Clark heard oral argument in this case but died thereafter and did not participate in the final decision.

funds, he published a newsletter which he distributed to active duty military personnel in the Pentagon. Priest's conviction was based on the May and June 1969 issues of the newsletter.

The May 1969 issue of the newsletter began with the following headline:

A CALL TO RESIST ILLEGITIMATE AUTHORITY
AN INDICTMENT AGAINST THE U.S. GOVERNMENT, THE ARMED SERVICES AND ITS INDUSTRIAL ALLIES
By Roger Priest, U.S. Navy

[Capitals in original]

The accompanying article closed with the warning:

And to those who hold illegitimate power over our lives we say to you that we will not accept the continuation of this war. We will continue to resist; and encourage others to do the same. SILENCE IS COMPLICITY.

[Capitals in original]

Another headline in the same issue read "BE FREE GO CANADA". The newsletter then listed the addresses of groups in Canada aiding military deserters and explained that landed immigrant status was available in Canada to deserters.

The June 1969 issue quoted Che Guevara concerning the supposed "futility of maintaining the fight for social goals within the framework of civil debate." It encouraged enlisted men to refuse promotions,—"Don't Get Promoted. Fail the System." This issue also contained a crude formula for gunpowder and quoted, with obvious approval, a verse attributed to Phil Ochs:

Ah, but some time later
When I feel a little safer
We'll assainate [sic] the President
And take over the government
And then we're going to fry them!

Elsewhere the June issue contained these declarations:

THERE ARE TWO KINDS OF VIOLENCE: VIOLENCE DIRECTED AGAINST A PERSON OR GROUP TO KEEP THEM IN A PARTICULAR PLACE AND VIOLENCE USED TO DEFEND THE PEOPLE AGAINST THIS SUPPRESSION. WE WILL USE VIOLENCE TO DEFEND THE PEOPLE.

The U.S. military must be turned upside down and shook so loudly that our brothers throughout the world can hear we've joined the struggle. COMING SOON—THE GREAT RATTLE!

WE WILL STOP AT NOTHING TO STOP THE VIETNAM WAR, AND THE POWER ARRANGEMENTS THAT MADE IT POSSIBLE. WE TAKE THAT "NOTHING" SERIOUSLY.

[Capitals and Emphasis in original]

Numerous slogans were included:

TODAY'S PIGS ARE TOMORROW'S BACON.

\* \* \*

BOMB AMERICA. MAKE COCA-COLA SOMEPLACE ELSE.

OUR GOAL IS LIBERATION . . . BY ANY MEANS NECESSARY.

SHOOT A PIG!!

[Capitals in original]

The Navy charged Priest with three offenses: (1) a violation of Article 82 of the UCMJ, 10 U.S.C. § 882, soliciting desertion or sedition; (2) a violation of Article 134 of the UCMJ, 10 U.S.C. § 934, incorporating 18 U.S.C. § 2387, distributing written matter which advises, counsels, or urges insubordination, disloyalty, mutiny, or refusal of duty by a member of the military forces; and (3) a violation of Article 134 of the UCMJ, 10 U.S.C. § 934, which prohibits "disorders and neglects to the prejudice of good order and discipline in the armed forces . . ."

Priest was convicted on two specifications of the third charge and acquitted of all other charges. He was sentenced to receive a reduction to the lowest pay grade and a bad conduct discharge. No confinement was imposed. The Navy Court of Military Review reversed the conviction upon the ground that the military judge failed to explain to the court-martial that disloyalty to the Navy or to a superior officer was not the same as disloyalty to the United States. *United States v. Priest*, No. 70–2332 (N.C. M.R. Feb. 9, 1971). On discretionary review the Court of Military Appeals held the instruction on disloyalty sufficient and reinstated the conviction. *United States v. Priest*, 21 C.M.A. 64, 44 C.M.R. 118 (1971). On remand the Navy Court of Military Review considered Priest's other allegations of error, including two that he urges here, insufficiency of the evidence to prove that

the newsletter might undermine discipline and improper instructions on the applicability of the First Amendment to the Article 134 charge. The Court of Military Review affirmed. *United States v. Priest*, 46 C.M.R. 368 (N.C.M.R.1971) as did the Court of Military Appeals, *United States v. Priest*, 21 C.M.A. 564, 45 C.M.R. 338 (1972).

### JURISDICTION

■ Collateral relief from the consequences of a court-martial judgment is barred unless it appears that the judgment is void. *Schlesinger v. Councilman*, 420 U.S. 738, 748, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). Whether a judgment may be deemed void turns upon two factors: the nature of the alleged defect in the proceedings and the gravity of the harm from which relief is sought. These in turn must be considered in light of the deference Congress expected the military justice system to receive in the federal courts. *Id.* at 753, 95 S.Ct. 1300. Priest received a bad conduct discharge that deprives him of substantially all veterans' benefits and operates as a formidable obstacle to employment. Moreover, impairment of First Amendment rights, if it occurred, would be a grave harm. We conclude that if Priest's interpretation of the First Amendment is correct, the defect in the court-martial judgment caused by improper instructions would be sufficiently fundamental to void it. We therefore have jurisdiction to review the judgment. *Schlesinger v. Councilman, supra* at 747, 753, 95 S.Ct. 1300, *Avrech v. Secretary of the Navy*, 171 U.S.App. D.C. 368, 370–71 n.5, 520 F.2d 100, 102–03

n.5 (1975), *cert. denied*, 425 U.S. 970, 96 S.Ct. 2165, 48 L.Ed.2d 793 (1976).

### FIRST AMENDMENT CONTENTIONS

Priest argues that his conviction must be reversed because the court-martial "was not instructed and accordingly, did not, consider appellant's First Amendment claims . . . [A]s a consequence, [the court-martial] did not strike 'the proper balance between legitimate military needs and individual liberties.'" (Appellant's Brief at 10, *quoting Avrech v. Secretary of the Navy, supra*, at 371, 520 F.2d at 103.) Priest relies upon our statement in the *Avrech* case:

> the act of balancing First Amendment rights against the military necessity of the moment is inextricably bound to the fact-finding process, and, on review, it is the instructions guiding the members of the court martial panel to which we must direct our attention. If the panel has been properly instructed, its findings cannot readily be set aside by an appeals court, especially in a collateral proceeding such as this.

171 U.S.App.D.C. at 373, 520 F.2d at 105.

■ At trial Priest requested an instruction which reflected the standard announced in *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (Per Curiam).[1] The military judge refused to give this instruction, believing it inappropriate to offenses under Article 134 of the UCMJ. The Court of Military Appeals upheld that refusal and went on to hold that the proper standard for the governance of free speech in military law is not that of

1. Defense Requested Instruction XVIII:

The court is further advised that the First Amendment of the Constitution does not permit punishment for statements which amount to mere advocacy of unlawful means to effect political and economic change. Therefore you are advised that even if you find that all of the elements I have set out above have been proven by legal and competent evidence beyond a reasonable doubt you must in addition find further beyond a reasonable doubt that the [statements] Pamphlets in their entirety must amount to an incitement to imminent lawless action and further that the Pamphlets in their entirety are

likely under the circumstances to produce such unlawful action. Consequently, in order to convict the accused of any one of the offenses alleged in specifications 4, 5 and 6 of Charge II, you must be satisfied by legal and competent evidence beyond a reasonable doubt that the pamphlet described in a particular specification did in its entirety amount to an incitement to imminent lawless action and was under the circumstances likely to produce such action. This requirement pertains separately to each of these specifications 4, 5 and 6 of Charge II.
(App. 47–48)

the *Brandenburg* case, but that of *Schenck v. United States*:

> [W]hether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent. It is a question of proximity and degree.

21 C.M.A. 564, 570 *quoting Schenck v. United States*, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919). We agree with the Court of Military Appeals that this is the standard against which Priest's conduct must be measured. The Supreme Court has explained that the *Brandenburg* standard is inapposite in a military context:

> In the armed forces some restrictions exist for reasons that have no counterpart in the civilian community. Disrespectful and contemptuous speech, even advocacy of violent change, is tolerable in the civilian community, for it does not directly affect the capacity of the Government to discharge its responsibilities unless it both is directed to inciting imminent lawless action and is likely to produce such action. *Brandenburg v. Ohio*, [395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969)]. *In military life, however, other considerations must be weighed.* The armed forces depend on a command structure that at times must commit men to combat, not only hazarding their lives but ultimately involving the security of the Nation itself. Speech that is protected in the civil population may nonetheless undermine the effectiveness of response to command. If it does, it is constitutionally unprotected.

*Parker v. Levy*, 417 U.S. 733, 758–59, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1974), *quoting United States v. Priest*, 21 C.M.A. 564, 570, 45 C.M.R. 338, 344 (1972). [Emphasis supplied]

■ We now consider whether the military judge's instructions properly explained the applicable standard. The instructions regarding the Article 134 offenses for which Priest was convicted are set forth in the Appendix to this opinion. Although the military judge did not refer expressly to the First Amendment, the requirements of the First Amendment are reflected in the instructions as a whole. The members of the court-martial were instructed that they must find that "the pamphlet was printed and distributed with the design to promote disloyalty and disaffection among the members of the Armed Forces . . . [t]hat under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the Armed Forces . . . ." The court was instructed further that "only . . . acts directly prejudicial to good order and discipline and not . . . acts which are prejudicial only in the remote or indirect sense" were to be considered. "The court is advised that statements critical of the policies of government are not in and of themselves disloyal and that robust and even harsh, impolite, or unpleasantly sharp criticism of public officials is allowable and is not in and of itself disloyal to the United States. . . . [A] design to promote disloyalty and disaffection among members of the Armed Forces of the United States is an essential element of [the charge]."

We think these instructions properly explained the test of the *Schenck* case and required the court to find that the publication, under the circumstances, tended to interfere with responsiveness to command or to present a clear danger to military loyalty, discipline, or morale. The First Amendment requires no more. The Supreme Court has held that Congress may, consistent with the First Amendment, prevent these two "substantive evils," i. e., "undermin[ing] the effectiveness of response [by military personnel] to command," *Parker v. Levy, supra*, at 759, 94 S.Ct. at 2563, *quoting United States v. Priest*, 21 C.M.A. 564, 570, 45 C.M.R. 338, 344 (1972), and diminution of military "loyalty, discipline, or morale," *Greer v. Spock*, 424 U.S. 828, 840, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976). Accordingly, we reject Priest's contention that the court was instructed improperly on the First Amendment issue. Having determined that the court was instructed properly, we cannot set aside its findings of fact in a collateral proceeding.

*Avrech v. Secretary of the Navy, supra,* at 373, 520 F.2d at 105.

Priest also contends that his conviction cannot stand because there is no evidence to support a finding that his newsletter either undermined or was likely to undermine the effectiveness of response to command.

■ The context of a particular speech determines whether it tends clearly to harm responsiveness to command or to endanger loyalty, discipline, or morale, and thus whether it is protected by the First Amendment. A relatively mild statement of dissatisfaction with military policy made at the front line of combat might be unprotected whereas the same statement would be protected in another place. When a court-martial hears an Article 134 case in which the defense is the First Amendment, the *Schenck* case counsels that it must evaluate the potential of the words themselves to erode loyalty, discipline, and morale, in light of the context in which they are uttered, to determine the likely effect of the words on military efficiency. It is this process that is the essence of "balancing First Amendment rights against the military necessity of the moment" which is "inextricably bound to the fact-finding" role of the court-martial. *Avrech v. Secretary of the Navy, supra,* at 373, 520 F.2d at 105.

■ The government does not have the burden of showing a causal relationship between Priest's newsletter and specific examples of weakened loyalty, discipline or morale; the question for the court-martial is whether there is a clear tendency of this type of speech to diminish them. We find the rationale of the Court of Military Appeals persuasive.

> [T]he danger resulting from an erosion of military morale and discipline is too great to require that discipline must have already been impaired before a prosecution for uttering statements can be sustained.
>
> \* \* \* \* \* \*
>
> The hazardous aspect of license in this area is that the damage done may not be recognized until the battle has begun.

At that point, it may be uncorrectable or irreversible.

*United States v. Priest, supra,* 21 C.M.A. at 570–71, 45 C.M.R. at 344–45.

We agree, and find no constitutional error in the military judge's decision to exclude Priest's evidence that his newsletter had no harmful effect upon military discipline. Furthermore, because the court-martial was instructed properly on the application of the First Amendment principles to the case, the determination whether there was a clear tendency to diminish responsiveness to command was a finding of fact to be made on the basis of the members' experience in the military. The newsletters in evidence contain enough material of the sort we have quoted above to support the conviction; reasonably construed, they were plainly calculated to subvert discipline. Therefore, we reject Priest's contention that the evidence was insufficient to support a conviction under First Amendment standards.

## FIFTH AMENDMENT CONTENTION

■ In addition to his First Amendment arguments Priest contends that the Court of Military Appeals violated his Fifth Amendment right of due process by failing to apply to his case its decision in *United States v. Harvey,* 19 C.M.A. 539, 42 C.M.R. 141 (1970). The Court of Military Appeals held that Priest was not entitled to an instruction that

> disloyalty charged here is to the United States and not disloyalty to any other person or institution such as the Secretary of Defense or the United States Navy.

In the *Harvey* case the Court of Military Appeals held a similar instruction necessary because

> [d]isavowal by the accused and his listeners of particular orders is not the equivalent of disavowal of the allegiance owed to the United States as a political entity. The risk that the court members mistakenly equated the two by reasonable con-

struction of the definition of disloyalty, is too great to be disregarded . . . 19 C.M.A. at 545, 42 C.M.R. at 147.

In upholding Priest's conviction upon the ground that the military judge's instructions were sufficient, the Court of Military Appeals distinguished the *Harvey* case. The court concluded that:

> [c]onsidering the totality of the instructions, we are satisfied they avoid the ambiguity of those in *Harvey* and *Gray* and present no reasonable risk that the court members predicated their finding that each Newsletter "in its entirety" was disloyal to the United States upon a finding that parts of the publication were disloyal to the military or a public official.

*United States v. Priest*, 21 C.M.A. 64, 66, 44 C.M.R. 118, 120 (1971).[2] The Court of Military Appeals is free to refine and develop its prior decisions without violating the due process rights of the litigants. On collateral review we are concerned only with fundamental constitutional errors. We find no such error here. The court-martial was instructed that

> the term "disloyalty" means not being true to or not being faithful to an authority to whom respect, obedience, or allegiance is due.

> \* \* \* \* \* \*

> The court is advised that statements critical of the policies of government are not in and of themselves disloyal and that robust and even harsh, impolite, or unpleasantly sharp criticism of public officials is allowable and is not in and of itself disloyal to the United States.

The First Amendment does not require the specific instruction that Priest proffered. The question whether the instruction fit the specification or met the requirements of military law, and the definition of disloyalty itself—so long as it comports with the First Amendment standards of clear danger to military loyalty, discipline, or morale or clear tendency to diminish the effectiveness

of response to command—are not proper subjects for this court's review.

The judgment of the District Court is *Affirmed.*

## APPENDIX

The court is advised that to find the accused guilty of any one of Specifications 4, 5 and 6 of Charge II, it must be satisfied as to that specification by legal and competent evidence beyond a reasonable doubt of the following:

(1) That at the time and place alleged in the specification and in the manner alleged in the specification, the accused caused to be printed and distributed a certain pamphlet as described in the specification;

(2) That the said pamphlet was distributed to members of the Armed Forces of the United States;

(3) That the said pamphlet, taken in its entirety, is disloyal to the United States;

(4) That the pamphlet was printed and distributed with the design to promote disloyalty and disaffection among the members of the Armed Forces of the United States;

(5) That under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the Armed Forces or was of a nature to bring discredit upon the Armed Forces.

These are the elements of Specifications 4, 5 and 6 of Charge II. Each specification avers that the place of the offense was at Washington in the District of Columbia.

Specification 4 states that the time was on or about 1 April 1969 and describes the pamphlet as being entitled, quote, "OM, The Serviceman's Newsletter," with the date of 1 April 1969.

Specification 5 alleges that the time was on or about 1 May 1969 and describes the pamphlet, quote, "OM, The Serviceman's Newsletter," with the date of 1 May 1969.

---

2. When he rejected Priest's proposed instruction on disloyalty, the military judge stated that disloyalty to the United States "certainly includes its various departments or subdivisions." (App. 49) This was a misstatement of law, but it is not grounds for reversal because the members of the court-martial did not hear it.

Specification 6 alleges that the time was on or about 1 June 1969 and describes the pamphlet as, quote, "OM, The Liberation Newsletter."

The term "disloyalty" means not being true to or not being faithful to an authority to whom respect, obedience, or allegiance is due.

The term "disaffection" as used in these specifications means disgust or discontent with, or ill will, disloyalty, or hostility toward an authority to whom respect, obedience, or allegiance is due.

In connection with the last element of these offenses under Charge II, you are advised that "to the prejudice of good order and discipline" refers only to acts directly prejudicial to good order and discipline and not to acts which are prejudicial only in the remote or indirect sense.

Discredit as used in Article 134 means "to injure the reputation of." It refers to conduct which has a tendency to bring the service into disrepute or which tends to lower it in public esteem.

The court is advised that the making of disloyal statements in violation of Article 134, as alleged in each of the Specifications 4, 5 and 6 of Charge II, is a lesser included offense of the offense proscribed by Section 2387 of Title 18 of the United States Code which has been here alleged as a violation of Article 134 in each of the Specifications 1, 2 and 3 of Charge II.

You are advised that you may not find the accused guilty of any offense unless you are satisfied of the accused's guilt beyond a reasonable doubt.

You are also instructed that Specifications 4, 5 and 6 of Charge II are lesser included offenses, respectively, of Specifications 1, 2 and 3 of Charge II. Therefore, you are instructed that if you return a finding of guilty to Specification 1, you may not return a finding of guilty to the lesser included offense of Specification 4. The same rule applies to Specification 2 and Specification 5 and Specification 3 and Specification 6. Specifications 4, 5 and 6 allege that the statements referred to

therein are disloyal to the United States. The court is advised that statements critical of the policies of government are not in and of themselves disloyal and that robust and even harsh, impolite, or unpleasantly sharp criticism of public officials is allowable and is not in and of itself disloyal to the United States.

You are instructed that you should not be influenced in any manner merely because the accused has made any statements with which you do not personally agree or has taken any position which is contra to your views on any particular issue. Further, you are advised that your sole function is to determine whether the accused has committed any of the offenses alleged in the charges and specifications. It is not relevant to your consideration whether or not the accused is a good sailor or whether or not he should be disciplined for any other reason other than the specifications alleged at this trial.

At this time I would like to remind you that you have heretofore been instructed to take judicial notice of the fact that views in opposition to the government's policy regarding Viet Nam are held by substantial numbers of people in various walks of life many of whom are prominent and respected members of professional, academic, political and government circles. This should be considered as evidence along with all the other evidence in the case.

I have advised you that an intent to interfere with, impair, and influence the loyalty, morale, and discipline of the military and naval forces of the United States is an essential element of Specifications 1, 2 and 3 of Charge II. Further, I have advised you that a design to promote disloyalty and disaffection among members of the Armed Forces of the United States is an essential element of Specifications 4, 5 and 6 of Charge II.