UNITED STATES, Appellee

v

WILLIAM L. HARVEY, JR., Lance Corporal,
U. S. Marine Corps, Appellant

19 USCMA 539, 42 CMR 141

540

No. 22,383

July 10, 1970

 ██

Edward F. Sherman, Esquire, argued the cause for Appellant, Accused. With him on the brief were Melvin L. Wulf, Esquire, Conrad J. Lynn, Esquire, Captain Frank A. Nelson, JAGC, USN, and Lieutenant Donald B. Brant, Jr., JAGC, USNR.

Lieutenant James E. Akers, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were Colonel C. R. Larouche, USMC, Lieutenant Colonel Charles J. Keever, USMC, Captain Lester G. Fant, III, USMCR, Commander Richard L. Fruchterman, Jr., JAGC, USN, and Lieutenant Thomas F. Bastow, JAGC, USNR.

Leon E. Irish, Esquire, argued amicus curiae. With him on the brief were Jacques Feuillan, Esquire, John E. Nolan, Jr., Esquire, and Richard D. Stearns, Esquire.

## Opinion of the Court

QUINN, Chief Judge:

This is a companion case to United States v Daniels, 19 USCMA 529, 42 CMR 131 (1970), decided this date. For the reasons set out in our opinion in Daniels, we hold that the offenses on which the accused was arraigned were triable by court-martial. Six of the specifications on which the accused was arraigned alleged a violation of 18 USC § 2387. The court-martial acquitted accused of two of the charges, but as to the remaining four, found him guilty of making disloyal statements in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, which it had been instructed was lesser included in the offense charged. The validity of these findings, therefore, is not affected by the instructional deficiency as to the principal offense which we noted in Daniels. See United States v Patterson, 14 USCMA 441, 34 CMR 221 (1964); United States v Wright, 1 USCMA 602, 5 CMR 30 (1952).

Appellate defense counsel and the amicus curiae contend that the offenses of which the accused now stands convicted are not lesser included within the original charge. The contention is predicated upon two separate grounds.

First, they maintain that section 2387 preempts the entire field of subversive declarations so that no charge can be laid and no conviction can be had for related conduct to the prejudice of good order and discipline, in violation of Article 134. See United States v Norris, 2 USCMA 236, 8 CMR 36 (1953). The preemption doctrine prohibits the armed services from eliminating one or more vital elements of a particular offense in order to charge the remaining elements as conduct to the prejudice of good order and discipline. Counsel acknowledge that the doctrine has been applied only to offenses "specifically delineated by the punitive Articles" of the Uniform Code. Id., at page 239; United States v Margelony, 14 USCMA 55, 33 CMR 267 (1963); United States v Taylor, 17 USCMA 595, 38 CMR 393 (1968). We need not decide whether the doctrine is also applicable to an offense described in the Federal civilian penal code, which is triable by court-martial only because of its special military significance. Cf. United States v Batchelor, 7 USCMA 354, 368, 22 CMR 144 (1956); United States v Blevens, 5 USCMA 480, 18 CMR 104 (1955). Assuming it is applicable, we are not

persuaded that section 2387 was intended by Congress to preclude prosecution under Article 134 of other kinds of conduct involving disloyalty to the United States. United States v Levy, 39 CMR 672, 677 (1968), petition denied, 18 USCMA 627 (1969).

Military law recognized the making of a disloyal statement as conduct to the prejudice of good order and discipline long before the enactment of section 2387, and its predecessor, the Espionage Act of 1917. See Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 728. It also recognized the independent nature of the military offense subsequent to the Espionage Act of 1917. United States v Poli, 22 BR 151, 166 (1943); United States v Gerson, 44 BR 13, 15 (1944). Nothing presented to us indicates that Congress intended to supersede the military offense by prohibiting the conduct defined in section 2387. United States v Taylor, supra; see also United States v Blevens, supra; United States v Toutges, 13 USCMA 425, 32 CMR 425 (1963).

The second aspect of the contention is that as a matter of law the offense found is not lesser included within that charged. Traditionally, this Court has worn an "outsize pair of spectacles in viewing the problem of lesser included offenses." United States v McVey, 4 USCMA 167, 175, 15 CMR 167 (1954). The general test is whether the specification of the offense on which the accused is arraigned "alleges fairly, and the proof raises reasonably, all elements of both crimes." United States v Duggan, 4 USCMA 396, 399, 15 CMR 396 (1954); see also United States v Thacker, 16 USCMA 408, 37 CMR 28 (1966). At trial, the parties agreed that the disloyal statement offense was included within the offense charged. So far as trial agreements of this kind are "reasonable," we have been inclined to accept them. Id., at page 411. See also United States v Taylor, supra. We turn, therefore, to consider the allegations and the reasonable inferences that can be drawn from them.

For convenient comparison of the offenses, we have arranged the essential elements and the allegations in separate columns:

| Specification 1 (Section 2387) | Disloyal Statement (Article 134) |
| --- | --- |
| 1. At stated time and place, the accused, | 1. At stated time and place, the accused, |
| 2. With the intent to interfere with, impair, or influence the loyalty, or morale, or discipline of Private C. E. Jones, | 2. With design to promote disloyalty or disaffection among the troops, |
| 3. Advised, counseled, urged or caused or attempted to cause insubordination, disloyalty, or refusal of duty by Private Jones by making statements to Jones as follows: (a) "Why should the black man go to Vietnam and fight the white man's war and then come back and have to fight the white man"; (b) "That he . . . was not going to fight in Vietnam and neither should Private JONES"; and (c) "That Private JONES should request mast of the company commander and tell the CO that he, Private JONES, would not go to Vietnam." | 3. Publicly made certain statements which are disloyal to the United States, and |

542

| Specification 1<br>(Section 2387) | Disloyal Statement<br>(Article 134) |

4. Which statements had a natural tendency to produce, or presented a clear and present danger that they would result in, interference with or impairment of the loyalty, morale, or discipline of Jones.

4. Which constituted conduct to the prejudice of good order and discipline or to the discredit of the armed forces.

A difference is apparent in the kind of conduct each offense prohibits. The conduct alleged in █ the specification is the effort to inculcate insubordination, disloyalty, or refusal of duty in Private First Class Jones, whereas the disloyal statement offense is concerned with disloyalty to the United States. However, the specification indicates that the accused's conduct consisted of declarations to Jones. The substance of the declarations is alleged. If they can reasonably be construed as importing disloyalty to the United States, they are of the kind proscribed by the Article 134 offense. For the moment, we pass over this problem. So far as the requirement that the statements be made "publicly" is concerned, the specification does not indicate whether the accused made the declarations attributed to him publicly or privately. Either circumstance, however, could be relied upon to prove the allegation; and to the extent the evidence showed the declarations were made publicly,[1] that element of the Article 134 offense was placed in issue. United States v Morgan, 8 USCMA 341, 24 CMR 151 (1957). The remaining question is whether an allegation of conduct to the prejudice of good order and discipline is fairly included within the allegations and proof of the specification. The question virtually answers itself. Conduct reasonably calculated to instill disloyalty or insubordination in a member of the armed forces assuredly connotes conduct to the prejudice of good order and discipline in the armed forces. United States v Blevens, supra. Since all the elements of the disloyal statement offense are reasonably included within the allegations of the offense charged, it was proper to submit that offense to the court members for their consideration

We turn now to the unresolved question whether the statements alleged in each specification were statements disloyal to the United States. In the *Daniels* case, we indicated that determination of the question as a matter of law is different from determination of the question as one of fact by the triers of the facts. Particular words may import disloyalty and be sufficient to justify denial of a motion to dismiss for legal insufficiency, but in evaluating the evidence and considering the credibility of the witnesses, the triers of the facts could find that they were not disloyal; and, conversely, the triers of the facts might find disloyalty where we might not, but if there is sufficient evidence in the record to support their findings, we would be constrained, in law, to affirm the verdict. United States v Taylor, 5 USCMA 775, 19 CMR 71 (1955). Cf. United States v Conrad, 15 USCMA 439, 35 CMR 411 (1965). Here, the problem is whether the statements set out in the specifications so distinctly import disloyalty to the United States as to support the legal conclusion that included within each specification is the lesser offense of uttering statements disloyal to the United States.

Some statements may be so explicit in meaning as to support a conclusion from their language that they are disloyal to the United States. Other statements require interpretation; and their real nature may be discernible only in the context of the circum-

---

[1] The law officer instructed the court members that they were required to find that the disloyal statement was made "publicly."

stances of their utterance. Words by themselves may not always reveal their character. Watts v United States, 394 US 705, 22 L Ed 2d 664, 89 S Ct 1399 (1969). The Vietnam war has evoked a vast outpouring of written and oral comment. The language of many of the comments is poised on a thin line between rhetoric and disloyalty to the United States. It is, however, unnecessary to determine in which category the accused's statements belong. Assuming, without deciding, that they are reasonably susceptible of description as statements disloyal to the United States and incorporate the lesser offense within the charge, the instructions as to the lesser offense are too deficient to allow us to uphold the court-martial's finding.

The offense found requires a finding of disloyalty to the United States in regard to two elements. ▌ As the comparison with section 2387 indicates, the accused's state of mind must be directed toward promoting among the troops disloyalty to the United States and the statements must themselves be disloyal to the United States.

Disagreement with, or objection to, a policy of the Government is not necessarily indicative of disloyalty to the United States. See New York Times Co. v Sullivan, 376 US 254, 270, 11 L Ed 2d 686, 84 S Ct 710 (1964). The United States Court of Appeals for the First Circuit, in Chandler v United States, 171 F2d 921, 938 (1948), certiorari denied, 336 US 918, 93 L Ed 1081, 69 S Ct 809 (1949), observed that "allegiance to the political entity the United States" is not the same as allegiance "to the person of the President" or to the "party in power for the time being." One can, for example, protest the Selective Service system and urge its abolition, without thereby being disloyal to the United States.

After enumerating the elements of the offense, as noted, the law officer defined the word "disloyalty." He instructed the court members that the word "imports not being true to, or being unfaithful toward, *an authority to whom respect, obedience, or allegiance is due.*" (Emphasis supplied.) There was no instruction that the authority to whom allegiance was due was the United States, not the Marine Corps or other department of Government; nor was there an instruction to indicate that disobedience of orders is not per se equivalent to disloyalty to the United States.

Willful disobedience of an order, however important the order might be, does not necessarily constitute disloyalty to the United States. In United States v Noyd, 18 USCMA 483, 40 CMR 195 (1969), for example, the accused demonstrated a genuine dedication to the United States as a political entity, but scruples of conscience about the Vietnam war compelled him to refuse to obey a lawful order to train others for participation in the war. The accused's refusal to obey could possibly have had the effect of reducing the military effectiveness of the United States in the Vietnam war, but on the record of his court-martial, he was not disloyal to the United States. There is substantial evidence in this record to indicate that at the time the accused made his statements he could reasonably expect that he and the persons to whom he addressed his remarks would soon be transferred to Vietnam. Each statement, as we shall indicate later, urged the listeners not to go to Vietnam. Under the law officer's definition of disloyalty, the court members could have concluded that the evidence of prospective disobedience to orders demonstrated unfaithfulness to the obligation of obedience to orders of the Marine Corps, as the representative of the United States. The reasonableness of the conclusion is apparent from the opinion of the board of review. The board of review concurred with the Government's contention that, by his conduct, the accused "was seeking to organize a group into collective action *to coerce*

*the Marine Corps to do his will."* (Emphasis supplied.) Disavowal by the accused and his listeners of particular orders is not the equivalent of disavowal of the allegiance owed to the United States as a political entity. The risk that the court members mistakenly equated the two by reasonable construction of the definition of disloyalty, is too great to be disregarded, notwithstanding we did not include the issue within our original grant (United States v McCarthy, 11 USCMA 758, 29 CMR 574 (1960); see also Terminiello v Chicago, 337 US 1, 3-4, 93 L Ed 1131, 69 S Ct 894 (1949)), and there was no objection to the definition by defense counsel at trial. United States v Brux, 15 USCMA 597, 36 CMR 95 (1966).

Reversal of the findings of guilty for instructional error requires us to consider whether any findings of guilty unaffected by error remain. United States v Patterson, 14 USCMA 441, 34 CMR 221 (1964); United States v Rhoden, 1 USCMA 193, 2 CMR 99 (1952). With the concurrence of trial and defense counsel, the law officer instructed the court members that there were two lesser offenses included within the section 2387 offense. The first was the disloyal statement offense; the second was the offense of advising insubordination or refusal of duty under circumstances to the prejudice of good order and discipline.

The statements in each of the specifications on which the court-martial returned findings of guilty are as follows:

| CHARGES | STATEMENTS |
|---|---|
| Charge I, specification 1 | "(1) Why should the black man go to Vietnam and fight the white man's war and then come back and have to fight the white man. |
| | "(2) That he (Lance Corporal HARVEY) was not going to fight in Vietnam and neither should Private JONES. |
| | "(3) That Private JONES should request mast of the company commander and tell the CO that he, Private JONES, would not go to Vietnam." |
| Charge I, specification 2 | "(1) Why should you (Private JOHNSON) go to Vietnam? Your people are over here fighting, why should you go over there and fight when you have to fight a war over here?" |
| Charge I, specification 3 | "(1) The black man should not go to Vietnam and fight the white man's war. |
| | "(2) That PFC James Charles GRIFFIN should not go to Vietnam to fight the white man's war. |
| | "(3) That PFC James Charles GRIFFIN was an 'Uncle Tom' for wanting to go to Vietnam to fight the white man's war." |

| CHARGES | STATEMENTS |
|---|---|
| Additional Charge, specification 2 | "(1) You should request Mast with the Captain (Company Commander) and refuse to go to Vietnam because there is no reason for you and the rest of the black men to go over to Vietnam and fight the white man's war.<br><br>"(2) You should request Mast before the Company Commander and refuse to go fight the war in Vietnam." |

All the statements were made at Camp Pendleton, California, during a period when the accused and the persons mentioned in the specifications were engaged in training to qualify them for service in Vietnam. It further appears that at the end of this training they, in all probability, would have been transferred to Vietnam. The declarations resulted in a request for mast by a number of members of the accused's unit. It is clear that the request was designed to avoid transfer to Vietnam.

Considering the nature and the consequences of the accused's declarations, the board of review determined, as we noted earlier, that they demonstrated an effort by the accused to "organize a group into collective action to coerce the Marine Corps to do his will." That conclusion might, perhaps, be justifiable on the basis of the entirety of the accused's conduct, but the separateness of the specifications requires that each be considered independently of the others. So considered, the court-martial's findings indicate, as a minimum, that the accused solicited a member of the Marine Corps to commit a military offense, specifically to refuse performance of a military obligation from which he could not be excused because of personal scruples. United States v Noyd, supra. The findings are consistent with the instructions as to the second lesser included offense, and constitute an offense in violation of Article 134. See Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 731, text reference to footnote 90; United States v Walker, 8 USCMA 38, 23 CMR 262 (1957). We conclude, therefore, that excluding the findings of guilty relating to the accused's state of mind and the nature of his declarations as disloyal to the United States, the remaining findings of guilty should be affirmed. United States v Oakley, 7 USCMA 733, 23 CMR 197 (1957).

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Navy for submission to the United States Navy Court of Military Review for reassessment of the sentence on the basis of the approved findings of guilty.

Judge DARDEN concurs.

Judge FERGUSON concurs in the result.