UNITED STATES, Appellee

v

GEORGE E. MARTINSON, Airman,
U. S. Navy, Appellant

21 USCMA 109, 44 CMR 163

No. 23,994

December 17, 1971

*Lieutenant Arthur H. Rainey,* JAGC, USNR, argued the cause for Appellant, Accused.

*Lieutenant James R. Lamb,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Commander Michael F. Fasanaro, Jr.,* JAGC, USN.

### Opinion of the Court

DARDEN, Chief Judge:

At a general court-martial Airman Martinson elected trial by a military judge alone. The charge was a violation of Article 80, Uniform Code of Military Justice, 10 USC § 880, through attempting to damage two jet aircraft engines by placing foreign objects in the intake ducts of the aircraft. By exceptions and substitutions the judge found Airman Martinson guilty of violating Article 134, Uniform Code of Military Justice, 10 USC § 934, by willfully, wrongfully, and intentionally placing foreign objects in the intake ducts, thus endangering the engines and aircraft in which they were installed.

We granted review to consider whether the specification of which Airman Martinson was convicted is a lesser included offense of the specification charged. During oral argument of the case we invited supplemental briefs on the related issue of whether the preemption doctrine announced in United States v Norris, 2 USCMA 236, 8 CMR 36 (1953), requires that this conviction be reversed.

**109**

At the trial, evidence established that a regular inspection resulted in the discovery of a penny in the air intake of one of two aircraft involved and of a nail in the intake duct of the other. The officer who testified on the value of the engines in the aircraft declared that the procedure for preflight inspections made certain the discovery of foreign objects that had been tossed in front of the fan of jet engines. This officer also expressed the opinion that a person who really wanted to damage the engines would have thrown the objects behind the fan blades.

In a sworn confession and in his testimony at trial Airman Martinson stated that he had placed the penny and the nail in the engine intake ducts. He elaborated his intention that preflight inspections with which he was familiar would result in discovery of the objects. His real intention he declared as being to harass others and to draw attention to himself. This testimony must have caused the judge to doubt that the appellant had the intent to damage. In any event, the judge found the appellant guilty of what the judge regarded as the lesser included offense of endangering Government property.

In United States v Norris, supra, this Court reversed a conviction for "wrongful taking" as an Article 134 offense that had been found as being included within a larceny charged under Article 121. The Court's opinion in *Norris* declared:

". . . We cannot grant to the services unlimited authority to eliminate vital elements from common law crimes and offenses expressly defined by Congress and permit the remaining elements to be punished as an offense under Article 134." [2 USCMA, at page 239.]

The *Norris* opinion refers to comments during hearings on the Uniform Code indicating a general intent to limit the use of Article 134 to military offenses. (2 USCMA, at page 239.)

Although criminal attempt was a common-law offense, the acts of Airman Martinson in creating a hazard to military aircraft permit little leeway for classifying the impact of his action as nonmilitary. Since jet engines have been installed in United States aircraft only since World War II, what the appellant did in this instance has no prolonged history as a military offense. As military doctrine and weapons change, however, some new military offenses necessarily develop. In addition, exceptions to the preemption rule have been approved when, despite the existence of a somewhat related punitive article, the misconduct offended against another interest to be protected. For example, two instances involving willful burnings of dwellings have been affirmed as Article 134 offenses despite the existence of an arson article: United States v Freeman, 15 CMR 639 (AFBR 1954) (burning to conceal evidence of another offense), and United States v Fuller, 9 USCMA 143, 25 CMR 405 (1958) (burning to defraud an insurance company). In this instance, the acts in question could have had consequences prejudicial to good order and discipline other than the financial cost of the engines: they could have resulted in harassing the command by causing investigations or in interference with military operations and training. Our holding on the preemption issue, then, is that the offense found is an exception because of its military nature.

We next consider whether the offense found is properly a lesser included one. Article 79, Uniform Code of Military Justice, 10 USC § 879, provides:

"An accused may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein."

In construing that article this Court has applied a test of "whether the specification of the offense on which

the accused is arraigned 'alleges fairly, and the proof raises reasonably, all elements of both crimes.'" United States v Harvey, 19 USCMA 539, 542, 42 CMR 141 (1970).

The appellant's first argument is that the specification did not put him on notice he would have to defend against the novel offense of "endangering government property." To support this argument he points out that at trial, upon invitation by the judge, the prosecution could suggest no lesser included offense and that only after prodding by the judge did the defense counsel indicate that an Article 134 offense might be included in the one charged.

It is true that the appellant did not have express notice that the word "endangering" would appear in the specification of the lesser included offense. The original specification gave him notice, however, that he was being tried for tossing the penny and the nail into the intake ducts. The original specification also alleged that the appellant had knowledge of the destructive effects of foreign objects injected into jet engines. As we view the language of the original specification it alleges fairly all the elements of the offense found.

The second contention of appellate counsel for Airman Martinson is that the evidence necessary to prove the elements of attempting to damage Government property did not necessarily prove the elements of endangering Government property. Counsel develops this contention by suggesting that proof of one element of the Article 134 offense (that the appellant's act endangered the engines) does not necessarily result from proof of the elements of the Article 80 offense. According to counsel, an attempt under Article 80 must only tend toward commission of the offense of damaging Government property, possibility rather than likelihood of success being the element, but that under the Article 134 endangering offense, jet engines could not be endangered unless damage to them was probable.

As Government counsel see this issue, the low probability that any actual damage would result from the appellant's acts is irrelevant, where, as here, the appellant seeks to rely on the effectiveness of an independent agency he neither initiated nor controlled to avoid the effect of the objects he had thrown.

We believe that describing the offense found as "endangering government property" is an excessively restrictive description of the essential elements making up this offense.

In attempting to measure whether the acts of the appellant constituted a lesser included offense, we are not bound by the connotation of the conclusory word "endangering" as this word was used in the specification. Allegations and proof, rather than an abstract analysis of elements, determine whether an offense is lesser included. United States v Hobbs, 7 USCMA 693, 23 CMR 157 (1957). Modern pleading practices encourage the allegation of facts instead of conclusions. Id., at page 703, dissenting opinion. In this instance, the specification alleges the acts of the appellant and the knowledge of the appellant and a conclusion in addition to the acts and knowledge.

This is the wording of the offense found by the military judge:

"In that Airman George Eric Martinson, U.S. Navy, at the line area of hangar #825, Naval Air Station, Cecil Field, Florida, on or about 0300, 24 February 1970, willfully and wrongfully, intentionally did place foreign objects in the intake ducts of two Pratt and Whitney TF 30–P6 jet aircraft engines of approximate value of $750,000.00 installed in two secured A–7 Corsair II type aircraft, thereby endangering said engines and aircraft valued at approximately $3,000,000.00, the property of the U. S. Navy, to wit: A three inch nail in the duct of aircraft (AC–410), and a U.S. minted copper alloy penny in the duct of aircraft (AC–404), having knowl-

edge of the destructive effects of foreign object injection in axial flow jet turbines."

We note that the specification included the words "willfully and wrongfully, intentionally did place foreign objects in the intake ducts." The specification also alleges knowledge of the destructive effects of foreign object injection in axial flow jet turbines. Whether the language was "thereby endangering" or whether the judge could have selected another label such as "thereby creating an additional possibility of foreign object injection" or whether any such conclusion was required is not the crucial determinant. In our opinion the decisive factor is whether the evidence that tended to prove Airman Martinson attempted to damage the engines necessarily proved that he willfully and wrongfully and intentionally placed foreign objects in the intake ducts and that he had knowledge of the potential destructive effects of these objects.

Airman Martinson testified that he placed the foreign objects in the intake ducts intentionally. He acknowledged he knew that what he had done was wrongful. His testimony showed he knew the potential destructive effects of the foreign objects inside jet engines. Hence, the allegations and proof both cover acts that the trier of fact could reasonably find as being prejudicial to good order and discipline. In fact the trial defense counsel, in arguing whether a lesser included offense could be found, conceded that the defense had never contended that what Airman Martinson did was not prejudicial to good order and discipline. These considerations, rather than what is comprehended within the conclusion that the engines were endangered, lead us to hold that the offense found was lesser included within the charged one of attempting to damage.

In general we discourage the use of specially formulated specifications under Article 134 as lesser included offenses of ones charged under specific punitive articles. But we are satisfied that the existing language of Article 134 supports the validation of the offense found in this instance. Since the acts of the appellant constituted a military offense and since they were directly and palpably prejudicial to good order and discipline, we affirm the decision of the United States Navy Court of Military Review.

Judge QUINN and Senior Judge FERGUSON concur.