LARSON, Chief Judge:
Contrary to his pleas, the appellant was convicted by special court-martial, before military judge sitting alone, of disrespect to a noncommissioned officer, assault upon that same noncommissioned officer and a general disorder in violation of Articles 91, 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 891, 928, and 934. He was sentenced to confinement for 6 months, forfeiture of $500 pay per month for 6 months, reduction to the lowest enlisted pay grade and a bad-conduct discharge.
The sole issue of substance in this appeal arises from the general disorder conviction, specifically whether uttering common profanity in a loud and angry manner, and in a public setting, constitutes a general disorder in violation of clause 1 of Article 134, UCMJ. We find that, under the circumstances of this case, it does not.
The facts relevant to the issue are these. The victim of the offense in question was a civilian woman who worked at a phone center aboard Marine Corps Base, Camp Lejeune, North Carolina. Her duties included placing the customers in phone booths for long distance calls. She was required to take their military identification cards and to instruct them as to the procedures for using the booths and paying for the calls. The appellant appeared at the center on 15 November 1991 as a customer. Between six and ten other service members were present. Record at 23. Apparently impatient because he was not being served promptly, the appellant engaged in an unpleasant dialogue with the victim, ultimately referring to her as “Fuck you, Bitch.” The words were said in an angry tone and loud enough to be heard by the other customers. Record at 24. The attendant became upset and began crying. The appellant remained irritated but eventually used the booth. When he was in the booth, she called the area guard patrol at the suggestion of her supervisor. After he left the booth, the appellant, upon learning that she had done so, stated, “The bitch is calling the MP’s. Ain’t this some mother fucking shit.” The appellant left with the area guard. Although everyone in the room apparently heard the appellant’s profane out *860 burst, there is no evidence that anyone intervened or was moved to take some other form of action.
Based on the foregoing, the appellant was charged with the offense of indecent language under Article 134. Manual for Courts-Martial, United States, 1984 (MCM), Part IV, ¶ 89. After ascertaining from the victim that she did not take the comments to be sexually suggestive, the trial defense counsel moved for a finding of not guilty at the close of the Government’s case. The military judge denied the motion but asked both counsel if the offense of disorderly conduct was a lesser-included offense (LIO) of indecent language in this case. Both counsel opined that it was not an authorized LIO.[1] Record at 65. The military judge ultimately found the appellant guilty of a general disorder under clause 1 of Article 134 by excepting the word “indecent” (plus some of the alleged profanity) from the specification and found him not guilty of that element. The specification of which the appellant was convicted now reads:
In that Lance Corporal ... Herron, U.S. Marine Corps [did] orally communicate to ... certain language, to wit: Fucking bitch. Ain’t this some mother fucking shit.”
Clause 1 of Article 134, UCMJ, proscribes disorders which are prejudicial to good order and discipline. Before we may affirm the finding of guilty to this offense, we must be satisfied not only that the uttering of these words amounts to a “disorder” within the meaning of Article 134 as a matter of law but, also, that a general disorder is a valid LIO of indecent language.[2]
Article 134, UCMJ, also known as the “general article,” was never intended to be a catchall for every conceivable improper act. United States v. Sadinsky, 14 C.M.A. 563, 34 C.M.R. 343, 1964 WL 5026 (1964). Indeed, the relatively narrow construction of the general article by the U.S. Court of Military Appeals plus the limitations on its use in the MCM were cited by the U.S. Supreme Court as two principal reasons it survived a challenge as violative of constitutional due process (as void for vagueness) in Parker v. Levy, 417 U.S. 733, 752-754, 94 S.Ct. 2547, 2559-60, 41 L.Ed.2d 439 (1974). Conduct proscribed by clause 1 of the general article has been confined to cases where the prejudice to good order is direct and palpable. United States v. Henderson, 32 M.J. 941 (N.M.C.M.R.1991), aff'd, 34 M.J. 174 (C.M.A.1992); United States v. Alford, 32 M.J. 596 (A.C.M.R.1991), affd, 34 M.J. 150 (C.M.A.1992). Such conduct must be easily recognizable as criminal, must have an immediate and direct adverse effect on discipline, and must be judged in the context in which the years have placed it. Parker v. Levy, 417 U.S. at 752, 94 S.Ct. at 2559; United States v. Davis, 26 M.J. 445 (C.M.A.1988); United States v. Williams, 26 M.J. 606 (A.C.M.R.1988). For example, in Davis, the conduct was cross-dressing aboard a military installation in public view. Id. 26 M.J. at 447. In Williams, it was wrongful flight from detention by a post exchange detective. In United States v. Choate, 32 M.J. 423 (C.M.A.1991), the conduct was exposing buttocks to another serviceman’s wife. The common thread through these cases is the injurious effect of the conduct on good order and discipline within the unit or aboard the installation.
The proscribed conduct can also include verbal expression, depending primarily on the circumstances surrounding the uttering of the offending words. Words that convey an obscene or libidinous thought or that communicate a threat have long been recognized as punishable under Article 134. MCM, Part IV, ¶¶ 89 and 110; United States v. McKin *861 ley, 27 M.J. 78 (C.M.A.1988); United States v. Gilluly, 13 C.M.A. 458, 32 C.M.R. 458, 1963 WL 4582 (1963); United States v. Beauregard, 31 C.M.R. 680, 1962 WL 4427 (A.F.B.R.), petition denied, 31 C.M.R. 314, 1962 WL 4905 (C.M.A.1962); see also United States v. Cox, 26 C.M.R. 582, 1958 WL 3439 (A.B.R.1958) (criminal libel as a violation of Article 134, UCMJ). Similarly, words that promote disloyalty to the United States fall within the scope of the general article. United States v. Harvey, 19 C.M.A. 539, 42 C.M.R. 141, 1970 WL 7022 (1970).
However, coarse language, or language that a particular listener finds offensive, does not per se constitute an offense under Article 134. United States v. Prince, 14 M.J. 654 (A.C.M.R.1982), petition denied, 16 M.J. 102 (C.M.A.1983). Every case that has considered this question has found the presence of some other factor that places the language within the scope of either Article 134 or some other article of the Uniform Code. See, e.g., United States v. Linyear, 3 M.J. 1027 (N.C.M.R.1977) petition denied, 5 M.J. 269 (C.M.A.1978) (referring to female marine as a “swine” not indecent under Article 134 but was a provoking word under Article 117, UCMJ, 10 U.S.C. § 917); United States v. Spigner, 16 C.M.R. 604 (A.F.B.R.1954) (offensive words directed at senior airman in the execution of his office constituted a violation of Article 134).
Applying the foregoing principles to the verbal conduct of which the appellant was convicted, we find that it comes up short. The closest recognized offense under Article 134 that applies to the uttering of these words is the charged offense — indecent language. Yet, he was found not guilty of that offense and that finding is the law of the case.[3] When one removes the element of indecency from consideration, merely uttering the words in question does not fall within the ambit of any of the other violations of Article 134 listed in the MCM, Part IV, nor can we identify it as a violation of any regulation or custom of the Naval Service (at least none for which evidence was introduced at trial). The criminalization of verbal conduct in the military has already been comprehensively defined by existing statutory and regulatory law. Although the offensive nature of the appellant’s profane outburst cannot be denied, if we were to affirm this particular finding of guilty, we would create, in effect, a new generic “offensive language” offense under Article 134. In keeping with our role as an intermediate appellate court, as well as the spirit of Parker v. Levy, we are not inclined to do so.[4]
The Government contends that we may find a general disorder in the fact that the appellant’s conduct, in addition to offending the victim, disturbed the peace and tranquility of others present. What the Government describes is the recognized offense of disorderly conduct. MCM, Part IV, ¶ 73. *862 The flaw in that position is that all parties specifically agreed that disorderly conduct was not a permissible LIO at trial. Record at 65. Where a possible LIO has been eliminated from consideration in this fashion and, in addition, is not listed as an LIO in the MCM, we cannot approve it as an LIO on appeal. McKinley, 27 M.J. at 80. Furthermore, disorderly conduct requires proof of an element not found in the charged offense, to wit: that the accused’s conduct was disorderly. Consequently, it is not an authorized LIO in any event. Brown v. Ohio, 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977). Finally, in view of the fact that the appellant pleaded not guilty to the offense of indecent language at trial, to affirm a conviction of this different offense on appeal would deprive the appellant of his constitutional due process right to be tried only on the specific offenses with which he is charged. Dunn v. United States, 442 U.S. 100, 106, 99 S.Ct. 2190, 2194, 60 L.Ed.2d 743 (1979); United States v. Brown, 18 M.J. 360 (C.M.A.1984).
The remaining assignments of error have been decided adversely to the appellant’s position by prior appellate decision and will not be addressed further. Weiss v. United States, — U.S. -, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994); United States v. Mitchell, 37 M.J. 903 (N.M.C.M.R.) (en banc), petition granted, 38 M.J. 313 (C.M.A.1993).
Accordingly, the findings of guilty to Charge II and its specification are set aside. Charge II is dismissed. The remaining findings of guilty are affirmed. Considering that the remaining offenses, which involved disrespect to and assault upon a noncommissioned officer, are far more serious than the dismissed offense, we reassess the sentence, pursuant to United States v. Peoples, 29 M.J. 426 (C.M.A.1990), and affirm it as approved on review below.
WELCH, Senior Judge (concurring in the result).

. Although it is not entirely clear from the record, it appears that counsel based their opinions on different reasons. The trial counsel stated that disorderly conduct was not an LIO of indecent language because it was not listed as such in the Manual for Courts-Martial. The defense counsel seemed to base his conclusion on the insufficiency of the evidence to prove disorderly conduct. Record at 65.

. We would also have to be convinced beyond reasonable doubt that the appellant committed the disorder and that it constituted prejudice to good order and discipline. United States v. Turner, 25 M.J. 324 (C.M.A.1987); Article 66(c), UCMJ, 10 U.S.C. § 866(c). However, in view of our resolution of the stated issue on other grounds, we need not make these determinations.

. Although we are not required to determine if the words used in this case are indecent, it is an interesting question about which the law is not clear. Indecent language is defined as that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought. MCM, Part IV, ¶ 89(c). In United States v. French, 31 M.J. 57, 60 (C.M.A. 1990), our senior Court appeared to limit its meaning to language that is calculated to corrupt morals or excite libidinous thought, i.e., language of a purely sexual nature. Presumably, this limited test is the reason the military judge found the appellant not guilty of using indecent language.
In light of French, we do not fault the military judge for his conclusion that the words used here were not indecent. However, we do not'view the Court's definition to be so limiting. That test was one that derived from the Court's analysis of the particular issue of whether the language must be indecent per se or whether it is sufficient if the words, although innocent by themselves, convey an indecent message under the alleged circumstances. The test announced in French does not necessarily eliminate other forms of indecent language as defined in the MCM. For example, words that are grossly offensive to decency because of their vulgar or disgusting nature — even though they are not uttered with any sexual meaning — would be “indecent” even if they fall outside the literal definition in French. See, e.g., United States v. Dudding, 34 M.J. 975 (A.C.M.R.1992), aff'd, 37 M.J. 429 (C.M.A.1993) (referring to a young girl as a "little bitch” found to be indecent under Article 134, UCMJ).

. We note as well Judge Cox’ observation in United States v. McKinley, 27 M.J. 78, 80, n. 1 (C.M.A.1988), albeit in obiter dictum, that the presence of specifically listed LIOs under the various Article 134 offenses in the MCM may have preempted the addition of a "simple disorder” as an additional LIO.