## UNITED STATES

v.

**Darrin D. CAVER, 421–96–6345, Interior Communications Electrician Second Class (E–5), U.S. Navy.**

**NMCM 93 01857.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 18 March 1993.

Decided 28 Nov. 1994.

Maj H.W. Frank, USMC, Appellate Defense Counsel.

· LtCol Frank F. Krider, USMCR, Appellate Government Counsel.

LT Brian B. Rippel, JAGC, USNR, Appellate Government Counsel.

Before MOLLISON, Senior Judge, and CLARK and DeCICCO, JJ.

MOLLISON, Senior Judge:

The principal issue in this appeal from a special court-martial conviction is whether the appellant's pleas of guilty to the offenses of indecent language and communicating a threat were providently entered. We conclude that they were and affirm.

### Background

Pursuant to a pretrial plea bargain, the appellant pled guilty to disrespect to a chief petty officer, larceny, wrongful appropria-

tion, unlawful entry, kidnapping, indecent language, communicating a threat, and drunk and disorderly conduct in violation of Articles 91, 121, and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 891, 921, 934 (1988). Following the required examination of the appellant on the factual basis for his pleas, the military judge accepted the pleas and entered findings accordingly. Rule for Courts–Martial [R.C.M.] 910, Manual for Courts–Martial, United States, 1984 [MCM]; *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). The military judge sentenced the appellant to confinement for 4 months, forfeiture of $400.00 pay per month for 4 months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence.

The record is now before this court for review. We may only affirm such findings of guilty and the sentence or such part or amount of the sentence as we find correct in law and fact and determine, on the basis of the entire record, should be approved. UCMJ art. 66(c), 10 U.S.C. § 866(c) (1988).

The appellant now claims matters raised at trial were in substantial conflict with his pleas of guilty to two offenses, indecent language and communicating a threat.[1] As to the offense of indecent language, the appellant contends the language he used, namely the word "bitch," was not indecent as a matter of law. As to the offense of communicating a threat, the appellant contends the threat he uttered was lawfully conditioned, thus negating an essential element of the offense, namely that the language communicated by the appellant expressed a present determination or intent to injure another.

A military Court of Criminal Appeals may not set aside a finding of guilty on the basis of an error of law unless the error is materially prejudicial to the substantial rights of the appellant; therefore, it will not set aside a finding of guilty based on a guilty plea unless "the record of trial show[s] a 'substantial basis' in law and fact for questioning the guilty plea." *United States v. Newsome*, 35 M.J. 749, 751 (N.M.C.M.R. 1992), *aff'd*, 38 M.J. 464 (C.M.A.1993) (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991)); UCMJ art. 59(a), 10 U.S.C. § 959(a) (1988); *see also United States v. Vega*, 39 M.J. 79 (C.M.A.1994).

### Indecent Language

It is an offense under Article 134 of the UCMJ for a servicemember to communicate orally or in writing indecent language to another person. MCM, Part IV, ¶ 89. For purposes of this Article 134 offense, the controlling definition of "indecent language" has been set out in the Manual for Courts–Martial by the President. *United States v. Herron*, 39 M.J. 860, 864 (N.M.C.M.R.1994) (Mollison, S.J., concurring); *cf. United States v. Mance*, 26 M.J. 244, 252 (C.M.A.1988). Thus, " '[i]ndecent' language is that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought. The language must violate community standards." MCM, Part IV, ¶ 89c; *see also United States v. Hullett*, 40 M.J. 189 (C.M.A.1994).

Whether or not specific language is "indecent" for purposes of this offense is a question of fact and largely depends on the context in which it is uttered.[2] The words uttered by the accused need not be indecent *per se. United States v. Wainwright*, 42 C.M.R. 997 (A.F.C.M.R.1970), *cited with approval in United States v. French*, 31 M.J. 57, 60 (C.M.A.1990). "Language which is on its face innocuous may be indecent if the context in which the language used sends an

---

1.

ASSIGNMENTS OF ERROR
I. INSULTING AN ADULT WOMAN BY CALLING HER A "BITCH" DOES NOT, AS A MATTER OF LAW, CONSTITUTE THE OFFENSE OF COMMUNICATING INDECENT LANGUAGE.
II. APPELLANT'S CONDITIONAL THREAT TO HARM PETTY OFFICER JACKSON IF HE TOUCHED HIM DOES NOT CONSTITUTE THE OFFENSE OF COMMUNICATING A THREAT WHERE THAT PERSON HAD NO AUTHORITY TO TOUCH APPELLANT.

2. "[I]ndeceny is largely a function of context—it cannot be adequately judged in the abstract." *F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 742, 98 S.Ct. 3026, 3037, 57 L.Ed.2d 1073 (1978) (Stevens, J.).

indecent message...." *Hullett,* 40 M.J. at 191. On the other hand, coarse language among servicemembers, male or female, does not *per se* constitute a violation of Article 134. *United States v. Prince* 14 M.J. 654 (A.C.M.R.1982), *petition denied,* 16 M.J. 102 (C.M.A.1983), *cited with approval in Hullett.* Therefore "whether language is indecent depends on a number of factors, including but not limited to 'fluctuating community standards of morals and manners, the personal relationship existing between a given speaker and his auditor, motive, intent and the probable effect of the communication....'" *Hullett,* 40 M.J. at 191 (quoting *United States v. Linyear,* 3 M.J. 1027, 1030 (N.C.M.R.1977), *petition denied,* 5 M.J. 269 (C.M.A.1978)).

■ The appellant was charged with communicating indecent language to a female E–3 by calling her a "slut bitch." The appellant pled guilty to this offense, excepting the word "slut." Following an explanation of the elements, including a definition of the term "indecent,"[3] and following an examination of the appellant in accordance with R.C.M. 910 and *Care,* the military judge entered a finding of guilty consistent with the plea. The military judge's examination of the appellant on the factual basis for this guilty plea revealed that at 2300, 18 December 1992, at Naval Station, New York, the appellant, an E–5, unlawfully entered the barracks room of a female E–3, grabbed her by the arm, and took her against her will to his own barracks room one deck above. There he blocked her departure from the room and called her a "bitch." These events caused a commotion in the barracks. Security personnel were summoned, and the victim reported to them what the appellant had said. This report was overheard by others in the barracks. The appellant admitted that his language was indecent and that by the word "bitch," he was referring to his victim's sexuality and sexual habits. Record at 34–35, 43. He explained that he meant she did not carry herself "right" or did not treat herself "like a lady." *Id.* at 35. The appellant further explained, "She carried herself like she would sleep around without [sic] other people. So, you know, that's why I called her a bitch." *Id.*

The appellant now claims that calling an adult woman a "bitch" does not constitute the Article 134 offense of indecent language as a matter of law. We have already noted that whether the language used by the appellant was indecent is a question of fact and depends on the context in which it was uttered.

The term "bitch" has been defined as "a lewd or immoral woman or a malicious, spiteful, domineering woman." *United States v. Dudding,* 34 M.J. 975, 977 (A.C.M.R.1992) (citing *Webster's New Collegiate Dictionary* 113 (1977)), *aff'd,* 37 M.J. 429 (C.M.A.1993). It has also been defined as "trollop" or "slut." *Webster's Third New International Dictionary* 222 (1971). In this case the appellant left no doubt he meant a lewd or immoral woman, a trollop, a slut.

■ Here, the language was directed by an E–5 to an E–3. The language was part and parcel of a violent disturbance in a military barracks. It was communicated during an abusive, degrading episode. See *United States v. Moore,* 38 M.J. 490, 493 (C.M.A. 1994). It was not innocuous. It was clearly calculated to offend, shock, and carry an

---

**3.** The military judge defined "indecent language" as that which is grossly offensive to the community sense of modesty, decency, or propriety or shocks the moral sense of the community because it conveys a libidinous message; that is, lustful, lewd, or salacious connotation, either expressly or by implication from the circumstances under which it was spoken. The particular language employed is calculated to corrupt morals or excite libidinous thoughts.

Record at 34–35. This explanation was apparently taken from the Department of the Army's Military Judges' Bench Book. DA Pamphlet 27–9 Update Memo 2, p. 3–317 (27 Jan 93). The explanation is not in accordance with that set forth by the President in the Manual for Courts–Martial. However, we do not believe the appellant was prejudiced or misled by the explanation given. If anything, it is more restrictive than the definition of "indecent" provided in the Manual. We also have the appellant's admissions on the record and those admissions conform to the definition of "indecent" provided in the Manual. Finally, we note that the language employed by the appellant under the circumstances was calculated to corrupt morals, even though it may have purportedly been uttered for the purpose of correcting supposed indiscretion. Nonetheless, we encourage military judges to employ the definition of "indecent," as set forth in the Manual for Courts–Martial.

indecent message. See *Hullett,* 40 M.J. at 192. Applying community standards, the language was grossly offensive to modesty, decency, and propriety because of its vulgar and disgusting nature. The use of the word employed in this case might not constitute an offense under other circumstances. However, considering the factors set forth in the record, including the context of the utterance, the intent and effect of the communication, and applying community standards, we conclude in this case the language was "indecent" within the meaning of the Manual for Court–Martial.[4] Accordingly, we find no substantial basis in law or fact for questioning the appellant's plea of guilty to this offense, and his guilty plea, therefore, will not now be rejected. *Vega; Prater; Newsome.*

### Communication of a Threat

■ It is also an offense under Article 134 of the Code for a servicemember to communicate wrongfully a threat to injure another. MCM, Part IV, ¶ 110. This offense concerns the potential violent distur-

---

4. We note that early on there was a propensity to resort to First Amendment obscenity law when disposing of issues raised in connection with this offense. *Wainwright,* 42 C.M.R. at 999. However, "[t]he need for obedience and discipline within the military necessitates an application of the First Amendment different from that in civilian society." *United States v. Moore,* 38 M.J. 490, 493 (C.M.A.1994).

> In the armed forces some restrictions exist for reasons that have no counterpart in the civilian community. Disrespectful and contemptuous speech, even advocacy of violent change, is tolerable in the civilian community, for it does not directly affect the capacity of the Government to discharge its responsibilities unless it both is directed to inciting imminent lawless action and is likely to produce such action. In military life, however, other considerations must be weighed. The armed forces depend on a command structure that at times must commit men to combat, not only hazarding their lives but ultimately involving the security of the Nation itself. Speech that is protected in the civil population may nonetheless undermine the effectiveness of response to command. If it does, it is constitutionally unprotected.

*Parker v. Levy,* 417 U.S. 733, 758–59, 94 S.Ct. 2547, 2562–63, 41 L.Ed.2d 439 (1974) (citation omitted) (quoting *United States v. Priest,* 21 U.S.C.M.A. 564, 570, 45 C.M.R. 338, 344 (1972)). Great deference is accorded the determinations of Congress and the President relating to the rights of servicemembers. *See United States v. Mitchell,* 39 M.J. 131, 136 (C.M.A.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994). Accordingly, we are of the view that as long as language uttered by a servicemember is "indecent," as defined by the President in the Manual for Court–Martial, and is "to the prejudice of good order and discipline in the armed forces" or "of a nature to bring discredit upon the armed forces," as proscribed by Congress in Article 134, it may be the basis for disciplinary action under the Code without transgressing the First Amendment. In other words, the definition of "indecent language" is not constrained by decisions interpreting the application of the First Amendment to obscenity laws applicable in the civilian community. Rather, what is indecent language is delimited by Congress and the President, and if the elements and definitions are satisfied, so, too, is the First Amendment as applied to servicemembers.

We also note that from time to time military appellate courts have elaborated on the Manual definition of "indecent language" or have applied various tests to factual settings in an effort to resolve issues before them. For example, in *French,* the United States Court of Military Appeals used as *a* test for indecency: "whether the particular language is calculated to corrupt morals or to excite libidinous thoughts." 31 M.J. at 60 (quoting *Linyear* ); *see also Hullett,* 40 M.J. at 191 (indicating the *French* test is *the* test); but see *F.C.C. v. Pacifica Foundation,* 438 U.S. at 739–41 & n. 14, 98 S.Ct. at 3035–36 & n. 14 (1978) (defining "indecent" as "nonconformance with excepted standards of morality"). *French* and other cases have also equated "indecent" with "obscene." *See Moore,* 38 M.J. at 492; *French,* 31 M.J. at 59; *United States v. Hudson,* 39 M.J. 958 (N.M.C.M.R.1994); see also *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) (defining obscenity for First Amendment purposes). Even the non-binding "Drafters' Analysis" to the Manual for Courts–Martial states "indecent" and "obscene" are synonymous. MCM, app. 21, A21–102, ¶ 89; MCM, Part I, ¶ 4 discussion; but see *Pacifica Foundation, supra* (recognizing "obscene" and "indecent" have different meanings and indecent speech may be regulated under some circumstances without transgressing the First Amendment). However, we do not view these elaborations or tests as restrictions on or changes to the definition of "indecent" employed by the President in the Manual for Courts–Martial. See *United States v. Herron,* 39 M.J. 860, 863 n. 3 (N.M.C.M.R.1994) (Larson, C.J.). Rather, we view these various elaborations and tests as judicial aids or "guideposts" to the resolution of the various issues at bar. *See French,* 31 M.J. at 59. In this case, we find the Manual definition of "indecent" sufficiently lucid to dispose of the issue. In any event, we conclude that the particular language employed here was calculated to corrupt morals and thus met the *Hullett/French/Linyear* test. *See supra* note 3.

bance of public peace and tranquility, the maintenance of order and discipline within the force, and the protection of persons in the execution of military duties. *See United States v. Holiday,* 4 U.S.C.M.A. 454, 16 C.M.R. 28 (1954); *United States v. Humphrys,* 7 U.S.C.M.A. 306, 310–11, 22 C.M.R. 96, 100–01 (1956) (Latimer, J., concurring); *United States v. Grembowicz,* 17 M.J. 720 (N.M.C.M.R.1983), *petition denied,* 18 M.J. 101 (C.M.A.1984); MCM, Part I, ¶ 3. To constitute this offense, the language communicated must express a present determination or intent to injure another wrongfully, presently or in the future. MCM, Part IV, ¶ 110b. It is not necessary that the accused actually intend to do the injury threatened. *Id.* at ¶ 110c.

■ "Fundamentally, every threat unexecuted involves some contingency, if none other than that the maker's purpose be not abandoned, or that execution by him be not prevented." *United States v. Shropshire,* 20 U.S.C.M.A. 374, 375, 43 C.M.R. 214, 215 (1971) (citation and quotations omitted). However, if an utterance is conditioned on a variable that cannot occur or is contingent on an event for which there is no reasonable possibility of occurrence, the condition or contingency negates the expression of a present determination or intent to injure. *Id.,* 20 U.S.C.M.A. at 375–76, 43 C.M.R. at 215–16; *see also United States v. Cotton,* 40 M.J. 93 (C.M.A.1994). On the other hand, the imposition by an accused of a condition the accused has no right to impose does not negate the expression of a present determination or intent to injure. *United States v. Alford,* 34 M.J. 150 (C.M.A.1992); *Holiday; Shropshire.*

■ The appellant pled guilty to wrongful communication of a threat to a Petty Officer Second Class Jackson, then known by the appellant to be in the execution of his office as Duty Master-at-Arms, by saying to him, "Jack, don't touch me. If you do, I will f* *k you up." The military judge's examination of the appellant on the factual basis for this guilty plea reveals that after taps on

15 December 1992, the duty master-at-arms, Petty Officer Jackson, was summoned to a barracks room on board Naval Station, New York, to investigate the recent theft of personal property. The appellant was present at the time. The appellant disclaimed involvement in the theft and left the area when he got tired of answering questions. Petty Officer Jackson followed the appellant when the appellant refused his order to stop. The appellant then uttered the words alleged, meaning that if Petty Officer Jackson touched the appellant, the appellant would strike him. The appellant admitted he was a little intoxicated at the time, was having trouble controlling his temper, and was loud enough to awaken others in the barracks.[5] The appellant also admitted that Petty Officer Jackson had authority to conduct the investigation, that appellant's words amounted to a present determination or intent to injure Petty Officer Jackson, that he did not accord Petty Officer Jackson the respect he was entitled under the circumstances, that appellant had no justification or excuse for threatening Petty Officer Jackson, that Petty Officer Jackson had not threatened the appellant with physical injury in any way, and that the appellant was wrongful in what he did. Record at 37–43.

Citing *United States v. Alford, supra,* the appellant now contends that "since Jackson had no apparent authority to apprehend appellant, he had no right to put his hands upon appellant. That being so, appellant did not impose a 'wrongful condition' upon Jackson by telling him that he would strike him if Jackson touched him," and the condition thus negated a present intent to carry out the threat. Appellant's Brief at 7–8. The appellant's argument is, however, based on three fallacies: (1) Petty Officer Jackson lacked the authority to detain, apprehend, or touch the appellant; (2) if Petty Officer Jackson did not have that authority, the appellant could lawfully strike or threaten to strike Petty Officer Jackson; and, (3) according to *Alford,* if the condition is rightful, the threat is not wrongful. It is also readily apparent

---

5. The appellant also pled guilty to the offense of drunk and disorderly at the same time. He supplied an adequate factual basis to support

that plea and does not now challenge its accuracy.

that the appellant's arguments do not go to the issue of whether the appellant expressed a present determination or intent to injure. Rather, they go to a different element—the wrongfulness of the communication, itself. *Cf. Humphrys,* 7 U.S.C.M.A. at 307–08, 22 C.M.R. at 97–98 (1956).

■ Petty officers and master-at-arms personnel are authorized to apprehend upon probable cause persons subject to the Code. UCMJ art. 7(b), 10 U.S.C. § 807(b); R.C.M. 302(b), (c). Petty officers are also authorized to apprehend servicemembers who take part in quarrels, frays, or disorders. UCMJ art. 7(c), 10 U.S.C. § 807(c) (1988); R.C.M. 302(c). Implicit in the authority to apprehend is the authority to issue such orders as may be necessary and proper to exercise that authority. *United States v. White,* 39 M.J. 796 (N.M.C.M.R.1994); 10 U.S.C. § 6011 (1988); Navy Regs., arts. 1037, 1039d (1990); Navy OPNAVINST 3120.32B, Standard Organization and Regulations of the U.S. Navy, ¶ 141.5 (26 Sep 1985) [hereinafter "SORM"]. A person authorized to apprehend may use such force and means as are reasonably necessary under the circumstances to effect the apprehension. R.C.M. 302(d)(3).

■ Military police personnel conducting official criminal investigations also have authority to issue such lawful orders as may be reasonably necessary to carry out their duties, including requiring military suspects and witnesses to identify themselves and to remain, at least temporarily, in the immediate area of the investigation, and when those orders are violated, the offender is subject to apprehension. UCMJ art. 92, 10 U.S.C. § 892 (1988); 10 U.S.C. § 6011 (1988); MCM, Part IV, ¶ 16c(1)(c), (2)(c)(ii); Navy Regs., arts. 1037, 1039d, 1137 (1990); SORM ¶ 141.5; *see United States v. Camanga,* 34 M.J. 1135, 1141 (A.C.M.R.1992), *aff'd,* 38 M.J. 249 (C.M.A.1993); *United States v. Fagan,* 28 M.J. 64 (C.M.A.), *cert. denied,* 493 U.S. 823, 110 S.Ct. 83, 107 L.Ed.2d 48 (1989); *United States v. Scott,* 22 M.J. 297 (C.M.A.), *reconsideration denied,* 23 M.J. 233 (C.M.A. 1986), *cert. denied,* 480 U.S. 931, 107 S.Ct. 1567, 94 L.Ed.2d 759 (1987); *United States v. Garcia–Lopez,* 16 M.J. 229 (C.M.A.1983); *United States v. Schneider,* 14 M.J. 189

(C.M.A.1982); *United States v. Glaze,* 11 M.J. 176 (C.M.A.1981); *United States v. Kersh,* 34 M.J. 913 (N.M.C.M.R.1992); *United States v. Thomas,* 21 M.J. 928 (A.C.M.R. 1986).

The appellant admitted Petty Officer Jackson was conducting an official criminal investigation as the duty master-at-arms. As such, Petty Officer Jackson had the authority to issue orders as may be reasonably necessary to carry out his duties, including requiring the appellant, who was a potential suspect or witness, to remain at least temporarily in the immediate area of the investigation. When the appellant violated this order, Petty Officer Jackson could have apprehended the appellant and could have employed physical force if necessary to do so. Additionally, it appears the appellant was drunk and disorderly, also justifying his apprehension. Even if Petty Officer Jackson was not detaining or apprehending the appellant, his touching of the appellant would not have been improper under all circumstances. For example, it is not improper to touch another person for the innocent purpose of gaining that person's attention or preventing injury. *Cf. United States v. Henley,* 9 M.J. 780, 783 (A.F.C.M.R.), *petition denied,* 10 M.J. 110 (C.M.A.1980); MCM, Part IV, ¶ 54(c)(2)(d). Thus, the premise for appellant's first argument, *viz* Petty Officer Jackson had no apparent authority to apprehend or touch the appellant, is false.

■ The appellant's second argument also falsely assumes that if Petty Officer Jackson touched the appellant without authority, the appellant could rightfully strike him and, therefore, could threaten to do so. The rule is clearly to the contrary.

[A]n accused cannot assert the illegality of a search or apprehension as a defense to a charge of assault and disrespect and that a military official or officer does not depart from his office simply because there is a subsequent determination that a search or apprehension was not based on probable cause.

*United States v. Lewis,* 7 M.J. 348, 352 (C.M.A.1979); *see also United States v. Lewis,* 12 M.J. 205 (C.M.A.1982) (different case); *United States v. Richardson,* 2 U.S.C.M.A. 88, 6 C.M.R. 88 (1952); *United States v.*

*Fetherson,* 8 M.J. 607 (N.C.M.R.1979). Unless the manner in which an apprehension is effected gives rise to a claim of self-defense or constitutes a departure from the office of the individual involved, the accused is not justified in using physical force to resist the apprehension. *Lewis; Lewis; Richardson; Fetherson.* Had the appellant been legitimately acting in self-defense, he would have been justified in using force and threatening its use. R.C.M. 916(e). But the appellant admitted that Petty Officer Jackson was the duty master-at-arms, that Petty Officer Jackson had authority to conduct the investigation, that he did not accord Petty Officer Jackson the respect he was entitled, and that Petty Officer Jackson had not threatened the appellant with physical injury in any way. Assuming Petty Officer Jackson lacked the legal authority to apprehend the appellant, the appellant would not have been justified or excused in assaulting Petty Officer Jackson, being disrespectful to him, or otherwise threatening him with physical injury.

Finally, appellant's reliance on *Alford* is misplaced. *Alford* creates no rule respecting the rightfulness or wrongfulness of the threat. It is simply another case in a line of cases that addresses whether the placement of a condition upon the threat negates the element that the expression be a present determination or intent to injure. It stands for the proposition that the accused's expression is not negated by the statement of a condition the accused has no right to place. It does not stand for the proposition that if the matters uttered in the condition are legitimate, the language communicated never expresses a present determination or intent to injure, or the threat that follows is always rightful. Reiterating, the rightfulness or wrongfulness of the threat is a separate matter. *Cf. Humphrys.* Recalling this offense concerns the potential violent disturbance of public peace and tranquility, the maintenance of order and discipline within the force, and the protection of persons executing military duties, the appellant's threat to strike the master-at-arms was wrongful under these circumstances, whether or not it would have been right or wrong for the master-at-arms to have touched the appellant.

The appellant admitted that his words amounted to a present determination or intent to injure Petty Officer Jackson. The contingency he placed on his hitting Petty Officer Jackson, namely Petty Officer Jackson's touching him, was neither impossible nor improbable. The condition was something the appellant had no right to impose. Even if the appellant should not have been touched, he was not justified or excused in uttering the threat. Finally, nothing in the record "belie[s] or contradict[s] the language of the declaration as to reveal it to be a mere jest or idle banter." MCM, Part IV, ¶ 110e; *Cotton,* 40 M.J. at 95 (quoting *United States v. Gilluly,* 13 U.S.C.M.A. 458, 461, 32 C.M.R. 458, 461 (1963)). Accordingly, based on this record, we find no conflict between the matters raised at trial and the plea of guilty; therefore, appellant's plea to this offense will also not now be rejected. *Vega; Prater; Newsome.*

### Wrongful Appropriation of an Interest in Real Property

Although not raised by the appellant, we note that he also pled guilty to Specification 2 of Charge II, wrongful appropriation of the use of Government quarters. The military judge's examination of the appellant on this guilty plea reflects that the appellant knowingly and wrongfully retained and used a barracks room after he had been assigned family housing. In particular, the appellant admitted he had a duty to notify authorities of the change in his circumstances. In *United States v. Case,* 37 C.M.R. 606 (A.B.R. 1966), *petition denied,* 37 C.M.R. 470 (C.M.A. 1967), the Army Board of Review held that an interest in realty, i.e., the use and occupancy of government quarters, is not a proper subject of an Article 121 offense. The Army Board was also of the opinion that the specification alleged an offense sounding in fraud under Article 134; however, inasmuch as the case was contested and the members were not instructed on it, the Board declined to affirm a conviction as to such an offense.

But here, the appellant pled guilty. If an accused pleads guilty and during the providence inquiry his responses establish a different but closely-related offense having a similar maximum punishment, the guilty plea may be affirmed on review. *United States v. Hubbard,* 28 M.J. 203, 206 (C.M.A.1989); *United States v. Epps,* 25 M.J.

319, 323 (C.M.A.1987); *United States v. Felty,* 12 M.J. 438 (C.M.A.1982); *United States v. Reap,* 39 M.J. 653 (N.M.C.M.R.1993), *petition for review granted,* 40 M.J. 38 (C.M.A. 1994). Obtaining services under false pretenses in violation of Article 134 is closely-related to the offense of wrongful appropriation. A plea of guilty to theft by false pretenses is provident when the accused admits he has a legal duty to correct a previous representation by notifying appropriate authorities of a change of circumstances, he fails to do so, and he has the requisite *mens rea* at the time of the obtaining. *United States v. Johnson,* 39 M.J. 707 (N.M.C.M.R. 1993), *aff'd,* 40 M.J. 318 (C.M.A.1994). The appellant admitted as much in this case. The record clearly establishes a factual basis for the offense of obtaining services under false pretenses and the punishments are not grossly disparate. *Compare* MCM, Part IV, ¶ 46e *with* MCM, Part IV, ¶ 78e. Accordingly, we may affirm the appellant's conviction of Specification 2 of Charge II.

### Convening Authority's Action & Promulgating Order

Under the terms of the pretrial agreement the convening authority was required to suspend all confinement in excess of time served. He neglected to do so; however, there is nothing to suggest that the appellant was actually required to serve time in excess of that called for under the terms of the pretrial agreement, and the period of suspension has now run. Accordingly, no remedial action is required. It is also noted that the convening authority purported to order the bad-conduct discharge executed in the special court-martial promulgating order the convening authority personally signed. That feature of the promulgating order was a nullity. See R.C.M. 1113.

### Disposition

The findings of guilty and sentence as approved on review below are affirmed.

Judge CLARK and Judge DeCICCO concur.