# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant MATTHEW A. REYES**
**United States Army, Appellant**

ARMY 20170198

Headquarters, I Corps
Lanny J. Acosta, Jr., Military Judge
Lieutenant Colonel John L. Kiel, Jr., Staff Judge Advocate

For Appellant: Major Julie L. Borchers, JA; Captain Oluwaseye Awoniyi, JA (on brief); Lieutenant Colonel Tiffany D. Pond, JA; Captain Zach A. Szilagyi, JA; Captain Oluwaseye Awoniyi, JA (on reply brief).

For Appellee: Lieutenant Colonel Eric K. Stafford, JA; Major Hannah E. Kaufman, JA; Captain Marc B. Sawyer, JA (on brief).

7 January 2019

--------------------------------
MEMORANDUM OPINION
--------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SCHASBERGER, Judge:

Staff Sergeant Matthew Reyes appeals his convictions for assault, aggravated assault, indecent language, and violating a protective order. In relevant part, appellant argues his conviction for communicating indecent language is factually insufficient. The language in question was a text message from appellant to his then-wife, which read as follows:

> Face of a god damn attention whore!! Complete fucking strangers see my own fucking wife better dressed than I do!! While Im [sic] away too! Fuck you!!! Go look good and get hit on by some fucking niggers!!! That's what Puerto Ricans like right! I know niggers like Puerto Ricans!

While we find the language of appellant's text message reprehensible, racist, and highly offensive in any ordinary context, we find it was not "indecent" within the meaning of the offense alleged and in the narrow context of its communication in this case. Therefore, we set aside appellant's conviction of that specification.[1]

A panel with enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of assault, three specifications of aggravated assault, one specification of communicating indecent language, and two specifications of violating a civilian protective order, in violation of Articles 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928, 934.[2] The panel sentenced appellant to a dishonorable discharge, confinement for eighteen months, forfeiture of all pay and allowances, and a reduction to the grade of E-1. The convening authority approved the sentence as adjudged and credited appellant four days against his sentence to confinement. Appellant's case is now before us under Article 66, UCMJ.

## BACKGROUND

Appellant met AR when they were both in the Warrior Leader Course in 2013. They married in November 2013. In January 2014, AR became pregnant and left the Army.

Appellant believed AR was seeing other men. AR believed appellant was seeing other women, frequenting strip clubs, and viewing pornography. They argued often. During their marriage, appellant assaulted AR on several occasions, including pushing, hitting, and strangling her. From the beginning, AR took photographs of her injuries and sent them to herself at an email address unknown to appellant.

In July 2014, appellant went to Georgia to attend the Advanced Leaders Course. While he was at the course, AR sent him a picture of herself dressed to go out to the mall. Appellant was angry that she was going out and responded with the vitriolic text quoted at the beginning of this decision.

Appellant, an army ranger, deployed eight times, including two deployments during his short marriage to AR. During appellant's last deployment, AR sent him divorce papers. They agreed to discuss the matter when he returned. In May 2015, AR filed for divorce and sought sole custody of their child.

---

[1] Appellant raised three other assignments of error that we have considered but find warrant no relief.

[2] The panel acquitted appellant of one specification of communicating a threat.

2

**LAW AND DISCUSSION**

Appellant argues his conviction of communicating indecent language is factually insufficient. We agree.

Though not explicitly proscribed by statute, uttering indecent language is enumerated in the Manual for Courts-Martial as an offense under Article 134, UCMJ.  There are three elements to the offense:

> (1) That the accused orally or in writing communicated to another person certain language;
> (2) That such language was indecent; and
> (3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*Manual for Courts-Martial, United States* (2012 ed.) [*MCM*], pt. IV, ¶ 89.b.  *See also* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, ¶ 3-89-1.c. (9 Oct. 2014).

Indecent language is defined as language, "which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought.  Language is indecent if it tends reasonably to corrupt morals or incite libidinous thoughts.  The language must violate community standards." *MCM*, pt. IV, ¶ 89.c.  S*ee also United States v. Green*, 68 M.J. 266, 269 (C.A.A.F. 2010); *United States v. Negron*, 60 M.J. 136, 142 (C.A.A.F. 2004).

Case law explains the decency of the language at issue must be evaluated in light of the circumstances under which it was communicated.  *See United States v. Smith*, 2016 CCA LEXIS 308, *4-8 (A.F. Ct. Crim. App. 17 May 2016) (citing *United States v. Brinson*, 49 M.J. 360, 363-64 (C.A.A.F. 1998) (holding profanity did not constitute indecent language where it was intended to express rage rather than sexual desire)).  The location and audience of the communication are also relevant to determining whether it was indecent.  *See, e.g., United States v. Caver*, 41 M.J. 556, 560-61 (N-M. Ct. Crim. App. 1994).

Not all ordinarily offensive comments, even those that contain profanity, rise to the level of being "indecent."  Appellant's vitriol, texted directly to his spouse, "was clearly calculated or intended to express his rage, not any sexual desire . . . ." *Brinson*, 49 M.J. at 364.  Appellant's statement did not incite lust or libidinous thoughts; if anything its racist nature provokes anger, not *amour*.

Though not of a nature to incite lust, appellant's language could still be indecent if it were "grossly offensive to modesty, decency, or propriety, or shock[ing to] the moral sense, because of its vulgar, filthy, or disgusting nature." *MCM*, pt. IV, ¶ 89.c. Few cases analyze language under this part of the definition. Our own analysis is guided by community standards and the context in which appellant's language was transmitted. Appellant's text is replete with vulgarities and racist epithets; we find that in some circumstances—in fact in most circumstances—this language would be grossly offensive. For example, if made in public, to a subordinate, to a stranger, or to a child. In this case, we find it significant that appellant's otherwise offensive statements were made privately to his wife.

We do not mean to suggest that language communicated to a spouse is immune from criminal sanction, but the relationship between the parties and the privacy of the communication matter. While we find appellant's language reprehensible, it was never meant to be read by anyone but his wife. Community standards allow greater leeway for such intimate communications before they rise to the level of "indecent," subject to criminal sanction under Article 134, UCMJ.

For the foregoing reasons, we have reasonable doubt appellant's otherwise highly offensive tirade met the elements of communicating indecent language under Article 134, UCMJ.[3]

---

[3] Under Article 66(c), UCMJ, we may affirm only those findings of guilty that we find "correct in law and fact and determine[], based on the entire record, should be approved." We review both legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). In factual sufficiency review, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt." *Id.* (A court of criminal appeals gives "no deference to the decision of the trial court" except for the "admonition . . . to take into account the fact that the trial court saw and heard the witnesses"); *see also*, *United States v. Davis*, 75 M.J. 537, 546 (Army Ct. Crim. App. 2015) (en banc), *aff'd on other grounds*, 76 M.J. 224 (C.A.A.F. 2017) ("the degree to which we 'recognize' or give deference to the trial court's ability to see and hear the witnesses will often depend on the degree to which the credibility of the witness is at issue."). "[A]fter weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we must be] convinced of the [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In this case, we are not ourselves convinced beyond a reasonable doubt that appellant's otherwise disgusting text message was "indecent" under community standards in the context of a private communication between spouses. Although the dissent implies we are disguising a legal objection in factual

(continued . . .)

**CONCLUSION**

On consideration of the entire record, the finding of guilty as to Specification 2 of Charge II is SET ASIDE and Specification 2 of Charge II is DISMISSED. The remaining findings of guilty and the sentence are AFFIRMED.[4]

Senior Judge MULLIGAN concurs.

FEBBO, Judge dissenting:

I don't understand the reasoning behind the majority opinion, and therefore cannot join it. I respectfully dissent.

*A. The Elements*

The majority purports to find the evidence factually insufficient. But the relevant facts are not in dispute. The offense of indecent language has three elements.

First, the government must prove that the accused made a communication to another person. The appellant testified that he sent the text to his wife. The language is not in dispute and is quoted verbatim in the majority opinion.

Second, the government must prove the language was indecent. Language is indecent if it is "grossly offensive" or "shocks the moral sense . . . because of its

---

(. . . continued)

attire, we are not. There may be, as the dissent observes, other reasons to question this particular specification in this particular case. We leave any analysis based on legal sufficiency or the First Amendment as applied to the military for another case and another day. We are not, as the dissent suggests, carving out a realm of spousal communication immune from sanction. Factual sufficiency review is necessarily the narrowest form of appellate review, and our holding extends no further than the precise facts before us.

[4] In reassessing the sentence we are satisfied that the sentence adjudged on the remaining charges and specifications would have been at least a dishonorable discharge, confinement for eighteen months, forfeiture of all pay and allowances, and a reduction to the grade of E-1. *See United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986); *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013). The gravamen of appellant's misconduct is his repeated aggravated assaults of AR, not his communication of offensive words.

vulgar . . . nature." The majority describes the text as "grossly offensive" in "most circumstances" and states the text contains "racist epithets" and is "replete with vulgarities." A communication that is "replete with vulgarities" is most assuredly a "vulgar" communication. At trial, appellant agreed the language was vile, degrading, and disgusting.

Finally, the government must prove that the language was prejudicial to good order and discipline or was of a nature to discredit the Army. The majority does not mention this element, but I doubt the source of our disagreement is whether this element has been proven. There is no reasonable dispute that racist and sexist language undermines good order and discipline or tends to discredit the Army. At trial, even appellant acknowledged that the language was offensive, service discrediting, and inconsistent with the language and values expected in the Army. So, if the evidence is not factually sufficient, I do not understand which element was not proven.

## B. The Marriage Exception?

The majority opinion focuses on the fact that this was a private communication between a husband and wife. There are good policy arguments in support of the majority's opinion.[5] The degree to which the law should reach into marital communications should be limited and narrowly applied. However, the offense carries no spousal communication exception. Nor does the spousal communication privilege apply. First, it was never asserted. Second, the President has determined that the spousal communication privilege does not apply in cases where one spouse is charged with a crime against the other. *See* Military Rule of

---

[5] There is, perhaps, an argument that private communications between spouses can never be indecent. However, this argument was not briefed and the majority does not rely on it. In *Stanley v. Georgia*, 394 U.S. 557, 568 (1969), the Supreme Court held that the government may not prosecute a person for the possession of obscene matter in his or her private home. Arguably, one could apply the Court's logic to all indecent matter (not just obscene matter). As spousal relationships are constitutionally recognized, one might argue that the logic of *Stanley* would apply to spousal communications. In any event, this court would eventually need to apply our superior court's test to determine whether, in the military context, the government's attempt to criminalize this speech must yield to the First Amendment. *See United States v. Priest*, 45 C.M.R. 338, 343-44 (C.M.A. 1972) (reaffirmed, *United States v. Rapert*, 75 M.J. 164, 171 (C.A.A.F. 2016)). As the majority seemingly decides this case on factual sufficiency, we never reach this question of law.

Evidence 504(c)(2)(A). Thus, the one area of the law which would provide *direct support for the majority's reasoning*, by its own terms does not apply here.[6]

And for good reason. Appellant's unwanted communication was not only indecent, it was also abusive. Appellant testified at trial that he sent the text in an angry response to a selfie from his wife. Appellant was upset at how his wife was dressing when going to – an apparently risqué location – the mall.[7] It was an effort to control his wife – how she dresses, how she looks, how she acts, who she sees, by using abusive and degrading language. His wife testified that she was shocked and disrespected by the text. She thought the language of the text message was embarrassing, degrading, and disrespectful. While the law protects marital relationships, it does not protect spousal abuse.

Under the majority's reasoning, appellant's message would be grossly offensive when sent to anyone but his spouse. Whether they will say it or not, today the majority carves out an exception to the offense of indecent language. Although analyzed as a question of fact, we might as well call it a question of law. Grossly offensive and vulgar communications are not "indecent" if they are sent privately to your spouse. Even when they are abusive.

---

[6] Accordingly, although framed as "factual insufficiency," I am concerned that today this court violates the principle underlying our superior court's decision in *United States v. Nerad*, 69 M.J. 138 (C.A.A.F. 2010). In *Nerad*, the Air Force Court of Criminal Appeals didn't like the government charging the accused with possession of a nude photo of his underage girlfriend. Similarly, the majority here does not like the government charging the accused's sending of a private text message to his wife. However, if a married soldier can direct such a grossly offensive, disgusting, and vulgar communication to a spouse, then marital status alone could be the dispositive fact and circumstance to make every act of subjecting a military spouse to unwanted indecent language in anger factually insufficient.

[7] In taking into consideration appellant's anger at the time he sent the texts, the trial court was presented the actual selfie and testimony from his spouse. Her clothing was not provocative or inappropriate to go to a mall. His spouse testified the only difference in her normal appearance was she was wearing eye shadow. Appellant's exchange was outside the circumstances that excused the drunk and disorderly rant made to a law enforcement official trained to respond to such insults during an arrest in *United States v. Brinson*, 49 M.J. 360 (C.A.A.F. 1998). Considering these facts and circumstances, I do not find appellant's anger to be reasonable or the indecent text a reasonable and excused response.

### C. The Entire Context

Marital status is a fact and circumstance to consider in determining if appellant's marital communication was "within the ambit of the narrowly limited classes of [punishable] speech." *Negron*, 60 M.J. at 144. However, marital status alone is not the sole fact and circumstance to consider. The majority opinion focuses on the "context" of the message; namely that this was a private message between a husband and wife. But the majority neglects the rest of the context. This was a message bookended by acts of physical violence. The "context" of this marriage is a violent, controlling, and abusive relationship that included intimate partner violence and acts of strangulation. In this "context," setting aside appellant's conviction for clearly indecent language does not encourage lawful spousal communication or deter government overreach in the future.

The public policy concerns in protecting spousal communications may be dispositive when considering the facts and circumstances of another case. However, I disagree that they are advanced in this case. This is *not* a case where the government is prosecuting an accused because of his intimate communications with his spouse. This is a case where the government is prosecuting the accused's *abuse* of his spouse.

Perhaps most surprising of all, this is a case where appellant's own counsel *conceded in argument* that appellant's text message was indecent. Sometimes a counsel may determine that there is more to be gained in conceding an issue (and thereby preserving credibility with the panel) than to make an unwinnable point. In appellant's case, a trained attorney who is professionally obligated to make the best case for his client, including arguments he may personally disagree with, concluded that there was more to be gained by conceding the obvious indecency of appellant's statement then contesting the fact.

Even if I could accept that it is not deeply offensive or vulgar to call your wife a "whore" or to weave into a text one of the most highly offensive racist words in the English language, I would be hard pressed to maintain this position in a case where the accused's words were backed up with his fists.[8]

---

[8] I do not mean to imply that appellant's language constituted a true threat. Rather, that the violent context removes any suggestion that this communication was in furtherance of the marriage.

REYES—ARMY 20170198

### D. Appellant's Statement Clearly Violates Community Standards

To constitute indecent language, the communication must violate community standards. In this case, this means the Army community.

Article 66(c), UCMJ, mandates that when we weigh the evidence, we must "recognize" or "take into account" that the trial court saw and heard the evidence. The trial court saw and heard the witnesses in determining the controverted facts and circumstances surrounding appellant's text. That same enlisted panel, with decades of experience knowing the standards of decency expected in the Army military community, found the language of appellant's text to his spouse violated those standards and was indecent. My review of the facts and circumstances of the communication leads to a similar conclusion that appellant's communication was contrary to the Army community's standard of decency. Appellant's text message is not acceptable to the Army community. Appellant's text – including repeated use of the "'N' word" to refer to his fellow Americans – would violate any community standard, military or otherwise.

By the majority's own reasoning, appellant's text would constitute indecent language if sent to anyone other than his spouse. By carving out a marital exception to indecent language, the majority licenses verbal spousal abuse as an exception to the bar on indecent language. Spouses are a vital part of the military community and deserving of no less protection from indecent language than afforded other members of the military community. A member of the military may have a marriage license, but that does not include a license to turn a spouse into a verbal punching bag and subject the spouse to unwanted indecent language free from criminal sanction. I think this decision is wrong and therefore I must dissent.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court

9